2001 OK CR 37

**Shelton D. JACKSON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. D1998–1412.**

Court of Criminal Appeals of Oklahoma.

Dec. 21, 2001.

Pete Silva, Public Defender, Paula Alfred, Denny Johnson, Assistant Public Defenders, Tulsa, OK, Attorneys for Defendant at trial.

Charles Richardson, District Attorney, Mark Collier, Steven Sewell, Chad Moody, Assistant District Attorneys, Tulsa, OK, Attorneys for the State at trial.

Jamie D. Pybas, Julie L. Gardner, Mark Henricksen, Appellate Defense Counsel, Norman, OK, Attorneys for Appellant on appeal.

W.A. Drew Edmondson, Oklahoma Attorney General, Jennifer B. Miller, Assistant Attorney General, Oklahoma City, OK, Attorneys for Appellee on appeal.

## *OPINION*

LILE, Judge:

¶1 Shelton D. Jackson was convicted by jury of count one, First Degree Malice Murder, 21 O.S.1991, § 701.7(A), count two, Arson in the First Degree; and count three, Injury to a Minor Child, in the District Court of Tulsa County, Case No. CF–97–1765, before the Honorable Jesse Harris, District

Judge.[1] During the sentencing stage, the jury found the existence of three aggravating circumstances: (1) the defendant knowingly created a great risk of death to more than one person; (2) the murder was especially heinous, atrocious, or cruel, involving mental and /or physical abuse; and (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. The jury set punishment at Death for count one. 21 O.S.1991, §§ 701.12(2), (4), & (5).[2] The jury set punishment at Thirty Five (35) Years and a $25,000 fine for count two, and Life and a $5,000 fine for count three. The trial court entered Judgment and Sentence in accordance with the jury's verdict. From this Judgment and Sentence, Jackson has perfected his appeal.

¶ 2 The shocking facts of this case are that on April 8, 1997, Monica Decator was found dead in her own home in Tulsa, Oklahoma. Gasoline had been poured throughout the house, and the gasoline had been ignited. However Decator did not die from fire or smoke. She died as a result of loss of blood from stab wounds and from head injuries caused by blunt force trauma. Decator's son Oz was missing from the house. As a result of investigations, Appellant, Decator's live in boyfriend, was taken into custody later the same day as he exited a bus in McAlester, Oklahoma.

¶ 3 Later that same day, Decator's son Oz was found underneath a neighboring house. He had been beaten and had suffered severe brain damage as a result of the beating.

¶ 4 During the investigation, the police found a brick and knives that had been used to beat and stab Decator. Witnesses saw Appellant buy gasoline on April 7, 1997, at about 2:45 p.m. Appellant also withdrew nearly all of Decator's money from her account at that time.

¶ 5 Appellant admitted to police that he had beaten Oz and killed Decator the night before. He said he just lost it with Oz because Oz was crying uncontrollably. He said he got into a fight with Decator over Oz's injuries. The fight escalated, and he had to beat and stab her. He stated that he was pouring gasoline on the floor the next morning, and the gas cook stove ignited the gasoline.

¶ 6 Testimony and evidence indicated that Appellant beat Oz sometime prior to 6:00 p.m. the evening before. After spending the evening with his uncle, Andre Jackson, from 6:00 p.m. until 10:00 p.m., Appellant told Jackson that he had injured Oz. Jackson took Appellant home to Decator's house. Appellant later called Jackson and told him that Oz was okay.

¶ 7 The next day Jackson picked up Appellant at the house, and Appellant indicated that he, Decator and Oz were all returning to Louisiana. However, he later told his mother that he was moving to Houston and that he and Decator had decided to go their separate ways. He said that Decator and Oz had already left. Appellant boarded a bus headed for Houston, but he was apprehended at the stop in McAlester.

¶ 8 Soon after Appellant left Decator's house with Jackson, a witness saw smoke coming from the house. Fire investigators testified gasoline was used as an accelerant, but the cook stove did not ignite it.

¶ 9 Appellant raises sixteen propositions of error in support of his appeal. The claims found in proposition one require reversal of the First Degree Murder conviction and Death Sentence and remand for a new trial. We find that the propositions that raise issues regarding counts two and three do not require reversal of those two counts; therefore counts two and three shall be affirmed.[3]

---

1. This crime occurred on April 8, 1997. Jackson was charged on April 10, 1997. The trial in this case was held November 9–19, 1998. Appellant's Petition in Error was filed in this Court on December 9, 1998. Appellant's brief was filed August 15, 2000. The State's brief was filed December 11, 2000. Appellant's reply brief was filed January 2, 2001. The case was submitted to the Court December 20, 2000. Oral argument was held April 3, 2001.

2. The jury did not find the fourth aggravating circumstance: the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

3. Appellant, in proposition three, claims that his statements to police were introduced in violation of his rights. We find that the pre-*Miranda* questioning did not induce Appellant's subsequent

¶ 10 Appellant contends in his first proposition of error that his trial counsel's "frank admission of guilt" during voir dire and first stage closing argument deprived Appellant of his right to counsel under the Sixth Amendment to the United States Constitution and his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution.

¶ 11 During voir dire, one of the attorneys representing Appellant stated,

"no one is going to be contesting guilt in this case. So, if you find Mr. Jackson guilty, is that, [prospective juror] Mr. Perry, all you need to know about him is that he committed these acts and would you be prepared to punish him for it?"

¶ 12 Later, defense counsel stated:

I told you folks before lunch that nobody is going to be contesting guilt in this case. Now, our role as lawyers, I hope you'll agree that and not be offended by, the fact that we're not offering a defense, does not mean that we're going to just sit back and let things happen. . . .

[N]obody is going to get up there and say, you know this was an accident, or I was in Texas.

So given that, that nobody is going to be contesting first degree murder, malice murder, do you think, [prospective juror] Ms. Rosinski, that somebody that commits malice murder deserves the death penalty?

¶ 13 Appellant's second attorney later said:

Now, in a case such as this when we are not contesting first stage, I, quite frankly, get very nervous. . . . I'm very concerned in these types of cases that if we don't put on evidence, then jurors may decide, along with the guilt or innocence, well there is really nothing, they have nothing to say, and they are going to start forming that opinion. You know, I have found the person guilty and I'm already deciding the proper punishment.

Later, also during jury selection, this attorney stated,

Now, as we've all indicated, . . . we do not intend to contest the issues in the first stage of this trial. . . .

This Attorney expressed his concern that if the jurors found his client guilty, they would automatically impose the death penalty.

¶ 14 Defense counsel's opening statement consisted, for the most part, of the following:

As you heard, we're not contesting first stage, but some of the things that Mr. Richardson outlined, I simply want you to listen to the testimony and the evidence. Nothing that Mr. Richardson said he anticipated the evidence will be is evidence in this case, so listen to the evidence yourself. And if it's something different than what you may have heard was going to be in opening statement, even if it's the same, you use what you hear from there. That's all we're asking you to do at this stage.

¶ 15 This Court most recently visited this issue in *Abshier v. State*, 2001 OK CR

---

confession. *Trice v. State*, 1993 OK CR 19, ¶ 24, 853 P.2d 203, 212. We find that the statements made prior to the *Miranda* warning were harmless due to the fact that the other evidence of guilt was overwhelming, including unsolicited statements made during Appellant's transportation to Tulsa and the admissible post-*Miranda* statements.

In proposition four, we find that there was no bad faith on the part of law enforcement officials in failing to preserve an inaudible audiotape recording or reports regarding this tape. In proposition five, Appellant complains about prosecutorial misconduct. We find that the statements complained about either were not preserved by objection and do not constitute plain error, were cured by objection and the trial courts admonition to the jury or were within the proper bounds of argument. *Stemple v. State*, 2000 OK CR 4, ¶¶ 44–49, 994 P.2d 61, 70–71.

In proposition five, we find that the dictates of *Perryman v. State*, 1999 OK CR 39, ¶ 14, 990 P.2d 900, 905, were not followed. The failure to utilize this procedure was harmless due to the fact that Appellant was able to present an enormous amount of mitigating evidence to counteract any possible harm. In proposition six, Appellant claims, in part, that victim impact evidence regarding the long term effects of Oz Decator's injuries were introduced. We find that evidence was relevant during the first stage to show the force and severity of injuries suffered by Oz. Appellant, in the remaining propositions, argues for reversal or modification of his First Degree Murder conviction and Death Sentence only. Our reversal of this count renders these propositions moot.

13, 28 P.3d 579. We held, in that case and continue to find that a concession of guilt does not amount to ineffective assistance of counsel, *per se.* *Id.* ¶ 61, 28 P.3d at 594. Furthermore, a concession of guilt is not the equivalent of a guilty plea, because the defendant retains his rights against compulsory self-incrimination, right to trial by jury, and the right to confront his accusers. *Id.* ¶ 63, 28 P.3d at 595. We also found and continue to find that there is no *per se* violation of due process in conceding guilt. *Id.* ¶ 65.

¶ 16 In *Abshier,* this court held that there was no evidence that the appellant opposed or disagreed with the concession strategy; we held that, at the least, Abshier acquiesced in the strategy. *Id.* ¶¶ 75–76, 80, 28 P.3d at 598. Therefore, this issue did not require relief in *Abshier.*

¶ 17 Pursuant to Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2001), this Court remanded this case to the Trial Court for an evidentiary hearing on this issue, as well as other effective assistance of counsel issues. In this hearing, Appellant's two trial attorneys, amazingly, testified they could not recall whether they did or did not discuss the strategy of conceding guilt with Appellant.

¶ 18 Defense counsel split responsibilities between the two stages of trial. Counsel responsible for the first stage, Pete Silva, made the concessions during *voir dire* and opening statement. Silva testified at the hearing on remand that he met with Appellant several times during the initial stages of the case. Silva recalled discussing trial procedure, possible defenses and strategies. He testified that at some point he believed that the best strategy was to concede guilt to first-degree murder; however, he didn't recall ever discussing the concession strategy with Appellant.

¶ 19 Counsel responsible for second stage, Paula Alfred, testified that she entered the case three to four months prior to trial and visited with Appellant on a weekly basis until trial. She testified that she discussed trial strategy with him, as well as other issues.

¶ 20 Alfred testified that she and co-counsel discussed trial strategy and decided it would be best to concede guilt during the first stage of trial and present mitigating evidence during the second stage in an effort to save Appellant's life. This decision was clearly acceptable trial strategy under the facts of this case. She could not recall whether she discussed the strategy with Appellant before trial. She did recall that during trial, after the concessions had been made, that she discussed the strategy with Appellant, and he seemed very scared and upset.

¶ 21 Appellant testified during the evidentiary hearing that he understood that the strategy was to concede that he committed the actions that resulted in the death of Monica Decator. However, he testified that before trial neither Silva nor Alfred discussed the concession of guilt strategy with him. He stated that he complained about the strategy to both Silva and Alfred during trial, but he was rebuked, and he didn't know that he could complain to the judge. Appellant wanted to assert self-defense.

¶ 22 After the hearing on remand was completed, the trial court made findings of facts and conclusions of law regarding this issue. The trial court concluded that the trial strategy was to concede guilt. The trial court also concluded that the evidence failed to establish that Appellant consented to or acquiesced in this strategy, thereby depriving him of effective assistance of counsel.[4]

4. We are mindful of the fact that trial counsel, by their conduct, have effectively produced a result favorable for their client: a new trial. This result, although favorable to Appellant, has unnecessarily wasted the resources of the courts and the time of the citizen jurors. The trial court concluded "the evidence fails to establish Mr. Jackson gave a knowing, intelligent, and voluntary consent to the concession of guilt to first degree malice aforethought murder, thereby depriving Mr. Jackson of effective assistance of counsel." This conclusion was based on the trial court's finding that (1) "Silva did not recall discussing the issue of conceding guilt with Mr. Jackson even though he was responsible for the first stage of trial," (2) "Alfred only recalls discussing the strategy of conceding guilt with Mr. Jackson during the trial," and (3) "Jackson was adamant that he never gave his permission to concede his guilt during the first stage of the trial."

The trial court found a denial of effective assistance of counsel, under this record.

¶ 23 We give strong deference to the findings of fact and conclusions of law of the trial court in determining the propositions; however, we shall determine the ultimate issue regarding effective assistance of counsel. Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals.* In this case we agree with the trial court's findings and conclusions.

¶ 24 The Oklahoma rules of Professional Conduct govern attorney conduct in this state. These rules do not lay the groundwork for claims of ineffectiveness, but they are pertinent to any discussion of attorney conduct when the rules touch on subjects raised in a claim of ineffectiveness. The rules set forth the necessity of open consultation between attorneys and clients; furthermore, some decisions are left to the client after such consultation. "In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify." Rule 1.2, *Rules of Professional Conduct,* 5 O.S.1991, Ch.1, App. 3–A. "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Rule 1.4(b), *Rules of Professional Conduct,* 5 O.S.1991, Ch.1, App. 3–A. Likewise, the decision to concede guilt must be the client's ultimate decision.

¶ 25 Without consultation, the attorney/client relationship is damaged, and the result may be an irreparable conflict between the attorney and client that could result in a claim of ineffective assistance of counsel. We believe that a complete concession of guilt is a serious strategic decision that must only be made after consulting with the client and after receiving the client's consent or acquiescence. The burden, on appeal, is on Appellant to show that he was not consulted and that he did not agree to or acquiesce in the concession strategy. In this case, that burden was met at the evidentiary hearing. Appellant asserts that the consultation did not occur; trial counsel can't remember, and there is no contrary evidence.

¶ 26 In *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court implemented a two pronged standard of review for effective assistance of counsel claims: first, an appellant must show that counsel's performance was deficient; second, appellant must show that the deficient performance prejudiced his defense. The Court went on to say that there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional conduct, i.e., an appellant must overcome the presumption that, under the circumstances, counsel's conduct constituted sound trial strategy. *Id.* at 689, 104 S.Ct. at 2065.

¶ 27 Failure to consult with and obtain Appellant's consent or acquiescence in the planned concession of guilt constituted deficient performance. We find prejudice because Appellant wanted to raise the issue of self-defense and was effectively prevented from presenting such a defense by the concession of guilt made by trial counsel. After full review we cannot find the error to have been harmless.

¶ 28 It may well be sound trial strategy to concede guilt during the first stage to gain credibility with the jury and to argue against the death penalty during the sentencing stage, especially when there is overwhelming evidence of guilt and no viable defense. This strategy is not without pitfalls; however, this Court is not in the business of second guessing counsel's trial strategy of full concession, as long as that strategy is undertaken with a client's consent or acquiescence.

¶ 29 We hold that a complete concession of guilt during the first stage of a capital trial must only be made with the client's consent or acquiescence. It has proven to be problematic to attempt to determine this issue months after the fact in an evidentiary hearing. In the future, therefore, if counsel chooses this strategy the trial court shall be informed before trial, or at least prior to the concessions being announced to the jury, and the trial court shall determine from counsel and the defendant, on the record, whether this strategy is one in

which the client has consented or acquiesced. If the client does not consent to or acquiesce in the strategy, then counsel shall follow the client's wishes.

 ¶ 30 The holding in this case should not be confused with cases wherein we have held that some type of tactical retreat does not amount to ineffective assistance of counsel. In *Trice v. State*, 1996 OK CR 10, ¶ 19, 912 P.2d 349, 355, a capital murder case, we held that failing to challenge a rape count and conceding guilt to the charge was not ineffective, *per se*. Furthermore, admitting involvement in a crime without admitting guilt to the charged offense does not amount to ineffective assistance of counsel, *per se*. *Hale v. State*, 1988 OK CR 24, ¶ 48, 750 P.2d 130, 142. Tactical retreats which concede that a defendant was involved in some aspect of a crime, a lesser included offense or some of the non-capital counts are not included in this holding. Moreover, an attorney's admission during the second stage of trial that a client is guilty of crimes for which he was convicted during the first stage is not a denial of due process of law. *See*

*Abshier*, 2001 OK CR 13, ¶ 71 & n. 6, 28 P.3d 579, 596 & n. 6.

### *CONCLUSION*

¶ 31 After thorough consideration of the entire record before us on appeal including the original record, transcripts, briefs and exhibits of the parties, we have determined that Appellant's Judgment and Sentence for count one, First Degree Murder, must be **REVERSED** and **REMANDED** for a **NEW TRIAL**. Appellant's Judgments and Sentences for counts two and three, First Degree Arson and Injury to a Minor Child are **AFFIRMED**.

LUMPKIN, P.J., JOHNSON, V.P.J., CHAPEL, J. and STRUBHAR, J., CONCUR.