2002 OK CR 30

**Clayton Derrell LOCKETT, Appellant.**

v.

**STATE of Oklahoma, Appellee.**

**No. D–2000–1330.**

Court of Criminal Appeals of Oklahoma.

Aug. 14, 2002.

Rehearing Denied Sept. 10, 2002.

Gary J. James, Oklahoma City, OK, for appellant at trial.

Mark L. Gibson, Brian Surber, Perry, OK, for the State at trial.

Robert Wade Jackson, Steven M. Presson, Norman, OK, for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, David M. Brockman, Assistant Attorney General, Oklahoma City, OK, for Appellee on appeal.

## OPINION

STRUBHAR, Judge.

¶1 Appellant, Clayton Derrell Lockett, was charged in the District Court of Noble County, Case No. CF–99–53, with Conspiracy (Count I), First Degree Burglary (Count II), Assault with a Dangerous Weapon (Counts III, IV and V), Forcible Oral Sodomy (Counts VI, XV and XVI), First Degree Rape (Counts VII, VIII, IX and XIV), Kidnapping (Counts X, XI, XII and XIII), Robbery by Force and Fear (Counts XVII and XVIII) and First Degree Murder (Count XIX). Counts I—XVIII were alleged to have occurred after former conviction of two or more felonies. With regard to First Degree Murder, Count XIX, the State filed a Bill of Particulars alleging five aggravating circumstances: 1) that Appellant was previously convicted of a felony involving the use or threat of violence,[1] 2) that Appellant knowingly created a great risk of death to more than one person,[2] 3) that the murder was especially heinous, atrocious or cruel,[3] 4) that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution,[4] and 5) that there exists a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society.[5]

¶2 The jury found Appellant guilty on all counts and assessed punishment at forty-five years on Count I, sixty years on each of Counts II and V, seventy-five years on Count III, ninety days on Count IV, one hundred fifty years on each of Counts VI and XVI, one hundred seventy-five years on Count VII, two hundred fifty years on each of Counts VIII and XIV, two hundred years on Count IX, one hundred years on each of Counts X, XI, XII and XIII, three hundred years on Count XV, and eighty-five years on each of Counts XVII and XVIII. With regard to Count XIX, First Degree Murder, the jury found the existence of each alleged aggravating circumstance and assessed punishment at death. The trial court sentenced Appellant accordingly, ordering the sentences be served consecutively.

### FACTS

¶3 At around 10:30 p.m. on June 3, 1999, Bobby Bornt was asleep on the couch at his house in Perry, Oklahoma, when his front door was kicked in. Three men, Appellant, Shawn Mathis and Alfonzo Lockett, entered his house and immediately started beating and kicking him. Bornt recognized Appellant because Appellant had recently covered a tattoo for him. Appellant was carrying a shotgun which he used to hit Bornt. After the beating, Bornt's attackers used duct tape to secure his hands behind his back and they gagged him and left him on the couch while they ransacked the house looking for drugs. As Bornt lay restrained on the couch his friend, Summer Hair, approached the open door. She was pulled inside, hit in the face and thrown against a wall. One of the men put a gun to her head and ordered her to call to her friend, Stephanie Neiman, who was outside sitting in her pickup. When Neiman came inside, they hit her several times to get the keys to her pickup and the code to disarm the alarm on her pickup.

¶4 The men put all three victims in the bedroom where Bornt's nine-month old son,

1. 21 O.S.1991, § 701.12(1).

2. 21 O.S.1991, § 701.12(2).

3. 21 O.S.1991, § 701.12(4).

4. 21 O.S.1991, § 701.12(5).

5. 21 O.S.1991, § 701.12(7).

Sam, had been sleeping. Alfonzo Lockett came into the bedroom and got Hair. He took her into the bathroom where he made her perform oral sodomy on him. He then took her into Bornt's bedroom where he told her to get undressed and he raped her. When he was finished, he left her there and Appellant came into the bedroom. He raped her vaginally and anally and he made her perform oral sodomy on him. When he was finished, he told her to get dressed and she went back into Sam's bedroom with the others. Alfonzo Lockett came into the bedroom and used duct tape to secure Hair's and Neiman's hands behind their backs. He also put tape across their mouths.

¶ 5 Appellant instructed Mathis to look in the garage for a shovel. When he returned with a shovel, the victims were loaded into Bornt's and Neiman's pickups. Bornt and his son were placed in his pickup with Appellant. Hair and Neiman were placed in Neiman's pickup with Mathis and Alfonzo Lockett. They took off driving with Appellant in the lead. They left Perry and drove to a rural area in Kay County. Appellant stopped on a country road where he got out of the pickup he was driving and went over to Neiman's pickup. He made Hair get out and go with him to a ditch where he raped her and forced her to perform oral sex on him. When he was finished, he took her back to Bornt's pickup. While Hair was sitting in the pickup, Mathis got her and took her back to Neiman's pickup where he made her perform oral sex on him. He grabbed her head and said, "In order for you to live, this is what you have got to do."

¶ 6 While stopped on the country road, Appellant told Mathis to get the shovel and start digging. When Mathis was digging in the ditch, Bornt heard Appellant say, "Someone has got to go." Neiman was taken to the hole dug by Mathis and Appellant shot her. The gun jammed and Appellant came back up to the pickup to fix it. While he was doing this, Bornt could hear Neiman's muffled screams. When the gun was fixed, Appellant went back down to the ditch and shot Neiman again. While Mathis buried Neiman's body, Appellant and Alfonzo Lockett warned Bornt and Hair that if they told

anyone they would be killed too. They then drove both pickups to another location where they left Neiman's pickup. All of them rode back to Bornt's house in his pickup. Appellant, Mathis and Alfonzo Lockett dropped off Bornt, his son and Hair at Bornt's house and they left in Bornt's pickup.

¶ 7 The following day, Bornt and Hair told the Perry police what had happened. Neiman's pickup and her body were recovered and Appellant, Mathis and Alfonzo Lockett were subsequently arrested. Appellant was interviewed by the police three times. The first time he terminated the interview and asked for an attorney. He later reinitiated the interview and although he denied shooting Neiman during the second interview, he confessed to having killed her in a third interview.

## VOIR DIRE ISSUE

¶ 8 Appellant concedes and the record reflects that the majority of the voir dire was conducted in open court and in his presence. However, several times, jurors were questioned individually, usually in chambers, without Appellant there. In each instance, defense counsel was present and lodged no objection to Appellant's absence. Appellant complains in his first proposition that he did not waive his right to be present during the entire voir dire and that by conducting portions of the voir dire in his absence, the trial court violated his constitutional and statutory rights.

¶ 9 The Unites States Supreme Court has acknowledged that voir dire is a critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present. *See Gomez v. United States*, 490 U.S. 858, 873, 109 S.Ct. 2237, 2246, 104 L.Ed.2d 923 (1989), *citing Lewis v. United States*, 146 U.S. 370, 374, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892). In addressing the constitutional right to be present during this portion of the trial, the Supreme Court noted early on that, "defense may be made easier if the accused is permitted to be present at the examination of jurors ... for it will be in his power, if present, to give advice or suggestion or even to supersede his lawyers altogether and conduct the trial himself." *Sny-*

der v. Com. of Mass., 291 U.S. 97, 106, 54 S.Ct. 330, 331, 78 L.Ed. 674 (1934). The Court went on to state that a defendant has a due process right to be present where his presence "bears, or may fairly be assumed to bear, a relation, reasonably substantial, to his opportunity to defend." *Id.* The Court added, however, that it did not intend to hold in any way that "the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow." *Id.,* 291 U.S. at 106–107, 54 S.Ct. at 331. "So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id.,* 291 U.S. at 107–108, 54 S.Ct. at 333. *See also Bland v. State,* 2000 OK CR 11, ¶ 19, 4 P.3d 702, 712, *cert. denied,* 531 U.S. 1099, 121 S.Ct. 832, 148 L.Ed.2d 714 (2001); *Perry v. State,* 1995 OK CR 20, ¶ 25, 893 P.2d 521, 527–28.

¶ 10 Appellant also complains that the portions of the voir dire conducted outside his presence violated 22 O.S.1991, § 583 which requires that a defendant be personally present at his trial if the prosecution is for a felony. This statute has never been interpreted to require a defendant's presence during all communications with jurors. *See Bland,* 2000 OK CR 11, at ¶ 20, 4 P.3d at 712.

¶ 11 Nineteen jurors were examined by the trial court outside Appellant's presence. Most were questioned about whether they had been prejudiced by pretrial publicity and others were questioned about issues which were of embarrassment to them or which the trial court did not want brought up before the entire panel. Of the jurors questioned in Appellant's absence, ten were excused for cause upon a finding by the trial court that they could not be fair to Appellant. The jurors who were not excused for cause were allowed to remain on the panel where they were later questioned by the prosecutor and defense counsel within the presence of Appellant. Of the jurors who were not excused by the trial court for cause, only three remained on the panel after the open voir dire. Appellant has made no objection to any of these three jurors and we find nothing in the record indicating that the presence of any of them on the jury panel prejudiced him.

¶ 12 We hold that in the future the trial court should hold all voir dire proceedings within the presence of the defendant. However, as the failure of the trial court to follow this procedure in the present case did not deny Appellant his constitutional rights or operate in any way to deny him his right to a fair trial, this assignment of error must be denied.

## FIRST STAGE ISSUES

¶ 13 Appellant was convicted in Counts VI and VII of aiding and abetting oral sodomy and rape committed by Alfonzo Lockett and in Count XVI with aiding and abetting oral sodomy committed by Mathis. He complains in his second proposition that the evidence was insufficient to support his conviction on these counts. In order for an accused to be convicted as a principal to a crime, it must be established that he directly committed each element of the offense, or that he aided and abetted another in its commission. 21 O.S.1991, § 172. "Aiding and abetting in a crime requires the State to show that the accused procured the crime to be done, or aided, assisted, abetted, advised or encouraged the commission of the crime." *Spears v. State,* 1995 OK CR 36, ¶ 16, 900 P.2d 431, 438, *cert. denied,* 516 U.S. 1031, 116 S.Ct. 678, 133 L.Ed.2d 527. This Court has held that "[w]hile mere presence or acquiescence, without participation, does not constitute a crime, only slight participation is needed to change a person's status from mere spectator into an aider and abettor." *Barnett v. State,* 1993 OK CR 26, ¶ 16, 853 P.2d 226, 231.

¶ 14 While there was no evidence that Appellant was present during the sexual assaults committed by Alfonzo Lockett and Mathis, the evidence strongly suggests that Appellant was in control of every aspect of the evening. Appellant was the person who initially kicked in the door and hit both Hair and Neiman. He also carried the shotgun most of the time. Bornt testified that Appellant gave the orders and told others what to do. From this evidence, a rational trier of fact could find, beyond a reasonable doubt,

that Appellant aided and abetted in the sexual assaults committed upon Hair by Alfonzo Lockett and Mathis. This proposition is without merit.

[5] ¶ 15 Appellant argues in his fourth proposition that trial counsel was ineffective for conceding his guilt in the first stage of trial without first obtaining his consent to this trial strategy and also for failing to marshal and direct the evidence of his mental illness into a coherent defense strategy.[6] "To prevail on a claim of ineffective assistance of counsel, Appellant must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance by showing: [1] that trial counsel's performance was deficient; and [2] that he was prejudiced by the deficient performance." *Humphreys v. State*, 1997 OK CR 59, ¶ 40, 947 P.2d 565, 577–78, *cert. denied*, 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998). *See also Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "To establish prejudice, Appellant must show a reasonable probability that, but for trial counsel's errors, the result of his [trial] would have been different." *Humphreys*, 1997 OK CR 59, at ¶ 40, 947 P.2d at 578. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Failure to prove either of the required elements is fatal to Appellant's entire claim. *See Black v. State*, 2001 OK CR 5, ¶ 65, 21 P.3d 1047, 1071, *cert. denied*, — U.S. —, 122 S.Ct. 483, 151 L.Ed.2d 396.

¶ 16 We first address Appellant's complaint that his trial counsel was ineffective for conceding Appellant's guilt in the first stage of trial without his consent. As Appellant correctly asserts in his Reply Brief, this Court recently addressed this issue in *Jackson v. State*, 2001 OK CR 37, ¶ 15, 41 P.3d 395, 399, wherein we noted that "there is no *per se* violation of due process in conceding guilt." However, in *Jackson*, this Court found a complete concession of guilt to be a serious strategic decision to be made only after consulting with the defendant and after receiving his or her consent. *Id.* at 400–01. We ultimately held that where the concession of guilt effectively prevented the defendant from presenting a defense to the crime(s) charged, a complete concession of guilt without the defendant's consent constituted deficient performance which was prejudicial to the defendant and which rendered trial counsel ineffective. *Id.* We do not depart from this ruling at this time. While this ruling required relief in *Jackson*, the same result is not required in the present case.

¶ 17 The record in the present case reveals that while defense counsel made abundantly clear to the jury that he would present no defense to the crimes charged—two victims were available to testify at trial and Appellant had confessed to the majority of the crimes alleged—he fell far short of making a complete concession of guilt to the crimes charged. In fact, trial counsel stated several times in his opening statement that he was not conceding Appellant's guilt and he repeatedly asked the jury to require the State to prove each and every element of each crime charged. This was not a complete concession of guilt which precluded Appellant from presenting a defense and accordingly, we do not find that this trial strategy denied Appellant his constitutional right to effective assistance of counsel.

---

6. In conjunction with his Sixth Amendment claims, Appellant has filed a motion for an evidentiary hearing in accordance with Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2002). This rule allows an appellant to request an evidentiary hearing when it is alleged on appeal that trial counsel was ineffective for failing to "utilize available evidence or adequately investigate to identify evidence which could have been made available during the course of trial...." Once an application has been properly submitted along with supporting affidavits, this Court reviews the application to see if it contains "sufficient evidence to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." Rule 3.11(B)(3)(b)(i). Upon review of the application and supporting exhibits, we find Appellant has not shown by clear and convincing evidence a strong possibility that defense counsel was ineffective for failing to utilize or identify the complained-of evidence. Accordingly, we deny Appellant's application for an evidentiary hearing.

¶ 18 Appellant next complains that trial counsel was ineffective for failing to marshal and direct the evidence of Appellant's mental illness into a coherent defensive strategy. The record reveals that defense counsel explored the possibility of presenting an insanity defense but declined to do so when "the statements and examination of [his] doctors and expert witnesses" failed to support this defense.[7] Instead, he presented his expert witness in second stage to testify about Appellant's mental illness in mitigation. Thus, the record before this Court supports neither a finding that trial counsel was deficient or that any alleged deficient performance prejudiced the Appellant.

## ISSUES AFFECTING BOTH STAGES OF TRIAL

¶ 19 Appellant complains in his third proposition that the admission into evidence of eight photographs depicting the shallow grave in which the victim was buried and the exhumation of her body by authorities from that grave constituted error undermining the fairness of the trial and sentencing determination. "The test for admissibility of photographs is not whether they are gruesome or inflammatory, but whether [their] probative value is substantially outweighed by the danger of unfair prejudice." *Hooks v. State*, 1993 OK CR 41, ¶ 24, 862 P.2d 1273, 1280, *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994); 12 O.S.1991, § 2403. Whether to introduce photographs of a homicide victim is a decision largely within the trial court's discretion and this decision will not be disturbed absent an abuse of discretion. *Id.*

¶ 20 It is well established that "photographs of murder victims can be probative in many respects.... They can show the nature, extent and location of wounds, establish the corpus delicti, corroborate testimony of medical examiners and expert witnesses and depict the crime scene." *Smallwood v. State*, 1995 OK CR 60, ¶ 33, 907 P.2d 217, 228, *cert. denied*, 519 U.S. 980, 117 S.Ct. 431, 136 L.Ed.2d 330 (1996). Here, the photographs at issue are probative insofar as they depict the crime scene and establish corpus delicti. The prejudicial effect of the photographs does not substantially outweigh their probative value. The trial court did not abuse its discretion in admitting the photographs into evidence.

## SECOND STAGE ISSUES

¶ 21 In his fifth proposition, Appellant argues that improper comments made by the prosecutor denied him his constitutional right to a fair trial. Specifically, Appellant complains that in four instances during second stage opening and closing arguments, the prosecutor told the jurors that "justice" demanded they impose the death sentence. Appellant acknowledges that none of the complained of comments were met with objection and accordingly, can only be reviewed for plain error. *See Hammon v. State*, 2000 OK CR 7, ¶ 62, 999 P.2d 1082, 1097, *cert. denied*, 531 U.S. 1090, 121 S.Ct. 812, 148 L.Ed.2d 697 (2001). However, he asserts that these comments were improper expressions of personal opinion which rose to the level of plain error. It is true that this Court has condemned instances where prosecutors have improperly expressed their personal opinion as to the appropriateness of the death penalty. *See Washington v. State*, 1999 OK CR 22, ¶ 63, 989 P.2d 960, 979. *See also Ochoa v. State*, 1998 OK CR 41, ¶ 55, 963 P.2d 583, 601, *cert. denied*, 526 U.S. 1023, 119 S.Ct. 1263, 143 L.Ed.2d 358 (1999). However, we have also found such comments did not rise to the level of plain error where they were "not phrased in personal terms, but appealed to the jury's understanding of justice and asked that standard be upheld." *Mitchell v. State*, 1994 OK CR 70, ¶ 44, 884 P.2d 1186, 1202, *cert. denied*, 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995). *See also Hammon*, 2000 OK CR 7, at ¶ 62, 999 P.2d at 1097. In the present case, when taken in context, it is clear that the prosecutor basically argued to the jury that justice required the death penalty be imposed under the particular facts of this case, not based upon his personal opinion. We find no plain error here.

7. Trial Transcript at p. 1218.

¶ 22 During the course of preparing for trial, defense counsel investigated the possibility of presenting an insanity defense and Appellant was examined by mental health experts hired by both the defense and the State. However, because the conclusions reached by Appellant's experts precluded defense counsel from following through with the presentation of this defense, he did not present a defense or call any witnesses to testify in the first stage of trial. Defense counsel did, however, call Dr. John R. Smith to testify in second stage about Appellant's mental health. Dr. Smith testified that while he did not believe Appellant to be insane, have a severe psychotic disorder or suffer from dissociative identity disorder, he opined that Appellant showed signs of posttraumatic stress disorder. He testified that Appellant was mentally ill. He also testified that he could not say with any degree of certainty whether Appellant would or would not be violent in a prison setting but he felt certain that Appellant would protect his territory.

¶ 23 In second stage rebuttal, the State presented its mental health expert, Dr. John Call, who testified that he performed a forensic psychological evaluation of Appellant based upon multiple sources. Dr. Call reached his professional diagnosis after reviewing police reports, Appellant's videotaped interviews, documents generated by Dr. Smith and Dr. Ferguson, and records from the Department of Corrections. He also interviewed the surviving victims, Mathis and Undersheriff Henry. He testified that he tried to test Appellant but Appellant would not cooperate. Based upon his review of all these sources, Dr. Call opined that Appellant was not insane, mentally ill or suffering from posttraumatic stress disorder. Rather, he testified that Appellant had a antisocial personality disorder and was a psychopath. When asked which portion of his review was most significant in contributing to his analysis, Dr. Call indicated that the videotaped interviews had a dramatic impact.

¶ 24 In his sixth proposition, Appellant complains that his Fifth and Sixth Amendment rights were violated when the statements he made to State's forensic psychologist, Dr. Call, were used against him in

the second stage to secure the death penalty. In support of his Fifth Amendment claim, Appellant cites primarily to *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), in which the Supreme Court held that the admission of a psychiatrist's testimony on the topic of future dangerousness, based on a defendant's uncounseled statements, violated the Fifth Amendment. However, the facts in *Estelle* differ significantly from those in the present case. In *Estelle*, the defendant neither initiated the psychiatric examination nor attempted to introduce any psychiatric evidence. Rather, the psychiatric examination was ordered by the trial court and the defendant was not advised prior to questioning that he had the right to remain silent and that his statement could be used against him in the sentencing proceeding to establish his future dangerousness. The United States Supreme Court has recently noted that Estelle's Fifth Amendment holding has not been extended beyond its particular facts. *Penry v. Johnson*, 532 U.S. 782, 793, 121 S.Ct. 1910, 1919, 150 L.Ed.2d 9 (2001).

¶ 25 In the present case, Appellant initiated a psychiatric evaluation for the purpose of exploring an insanity defense, thus entitling the State to have Appellant examined by its own mental health expert. *See Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987). While Appellant did not present an insanity defense in first stage, he did introduce psychiatric evidence in the sentencing proceeding, ostensibly in mitigation of the alleged aggravating circumstances. The State presented its mental health expert in second stage to rebut Appellant's psychiatric evidence. This Court has held that where the defendant opens the door with the introduction of psychological evidence, the State is entitled to introduce such evidence in rebuttal without implicating the Fifth or Sixth Amendments. *See Martinez v. State*, 1999 OK CR 33, ¶ 62, 984 P.2d 813, 829, *cert. denied*, 529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000).

¶ 26 As the Supreme Court has declined to draw the Fifth Amendment protections afforded in *Estelle* either more broadly or more narrowly than is required by the facts of that case, we too are so limited. Thus, we

find that Appellant suffered no Fifth Amendment violation by the introduction of the State's psychiatric testimony in the second stage rebuttal. However, even if this Court were to find that Appellant's Fifth Amendment rights were violated by the State's mental health expert's reliance upon evidence gained from his interview with Appellant, we would find that under the facts of this case, any error was harmless beyond a reasonable doubt. This is because although the State's expert spent some time with Appellant, he testified that Appellant refused to cooperate and did not complete the psychological tests. Thus, the bulk of the expert's information was gained from sources other than Appellant.

¶ 27 Appellant next complains that the introduction of the State's psychiatric evidence in the second stage violated his Sixth Amendment right to counsel because his defense counsel was not given advance notice of the scope of Dr. Call's examination. This argument is based upon the premise that Dr. Call's examination of Appellant went beyond what was necessary to defend against an insanity defense. The record simply does not support this claim. Again, as Appellant refused to complete tests for the State's forensic psychiatrist, it can hardly be said that the State's expert exceeded the scope of the evaluation to which he was entitled. It is clear that most of the evidence relied upon by the State's forensic psychiatrist came from sources other than Appellant to which the State was clearly entitled. There was no Sixth Amendment violation here.

¶ 28 In his seventh proposition Appellant raises several issues relating to the propriety of the victim impact statement prepared by the victim's parents. Proper victim impact evidence is limited to information "about the financial, emotional, psychological, and physical effects of a violent crime on each victim and members of their immediate family...." 22 O.S.Supp.1998, § 984(1). Victim impact testimony may include "information about the victim, circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion of a recommended sentence." *Id.* Appellant first claims that the victim impact statement was unfairly prejudicial as it included statements about the victim's childhood and her future plans. It is true that statements about a victim's childhood have no relevance in victim impact evidence. *See Brown v. State,* 1998 OK CR 77, ¶ 84, 989 P.2d 913, 933. *See also Cargle v. State,* 1995 OK CR 77, ¶ 80, 909 P.2d 806, 829, *cert. denied,* 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996) (pointing out victim's positive attributes as a child "in no way provides insight into the contemporaneous and prospective circumstances surrounding his death"). It is also true that statements about the victim's plans for the future may not have been relevant victim impact evidence. *See Phillips v. State,* 1999 OK CR 38, ¶ 100, 989 P.2d 1017, 1043, *cert. denied,* 531 U.S. 837, 121 S.Ct. 97, 148 L.Ed.2d 56 (2000).

¶ 29 Appellant also complains that the victim impact statement was improper because it contained characterizations of the crime and requested the jury to return a sentence of death. He contends that such statements are prohibited by the Supreme Court's holding in *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). This Court discussed this argument in *Ledbetter v. State,* 1997 OK CR 5, ¶ 27, 933 P.2d 880, 890–91, where we found that the Supreme Court's ruling in *Booth* regarding the constitutionality of victim impact statements which contain characterizations of the crime and opinion of the appropriate punishment was overruled by *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). We acknowledged in *Ledbetter* that while the Eighth Amendment is not implicated by this type of statement, the Due Process Clause of the Fourteenth Amendment may be if the statement is so unduly prejudicial that it renders the trial fundamentally unfair. *Ledbetter,* 1997 OK CR 5 at ¶ 28, 933 P.2d at 891.

¶ 30 While a portion of the victim impact testimony was improper, when taken as a whole, the testimony did not have such a prejudicial effect or so skew the presentation as to divert the jury from its duty to reach a reasoned moral decision on whether to impose the death penalty. There was no constitutional violation here.

¶ 31 Finally, Appellant argues that victim impact evidence is unconstitutional as applied in Oklahoma's capital sentencing scheme. We have previously considered and rejected such claims and see no reason to depart from this precedent at this time. *See Myers v. State,* 2000 OK CR 25, ¶ 67, 17 P.3d 1021, 1036, *cert. denied,* — U.S. ——, 122 S.Ct. 228, 151 L.Ed.2d 163 (2001). *See also Young v. State,* 2000 OK CR 17, ¶ 87, 12 P.3d 20, 44, *cert. denied,* 532 U.S. 1055, 121 S.Ct. 2200, 149 L.Ed.2d 1030 (2001).

¶ 32 In his eighth proposition, Appellant complains that he was deprived of a fair sentencing proceeding by the State's improper use of a non-violent conviction to support the continuing threat aggravating circumstance. He claims that his prior burglary conviction was not relevant to prove that he constituted a continuing threat to society. "To support the aggravator of continuing threat, the State must present evidence showing the defendant's behavior demonstrated a threat to society and a probability that threat would continue to exist in the future." *Hain v. State,* 1996 OK CR 26, ¶ 67, 919 P.2d 1130, 1147, *cert. denied,* 519 U.S. 1031, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996). Generally speaking, when a defendant's prior criminal convictions are at issue for purposes of continuing threat, the focus is only on those crimes which indicate the likelihood of future violence. *See Torres v. State,* 1998 OK CR 40 ¶ 70, 962 P.2d 3, 23, *cert. denied,* 525 U.S. 1082, 119 S.Ct. 826, 142 L.Ed.2d 683. In *Medlock v. State,* 1994 OK CR 65, ¶ 41, n. 30, 887 P.2d 1333, 1346 n. 30, *cert. denied,* 516 U.S. 918, 116 S.Ct. 310, 133 L.Ed.2d 213 (1995), this Court explicitly declined to adopt the position that only criminal acts of violence which would be applicable to the "prior conviction of a violent crime" aggravating circumstance are relevant to the question of continuing threat. The Court held that evidence of non-violent offenses may be admissible to prove continuing threat where "the prior offenses must relate to and indicate whether there exists a probability that the defendant would commit future criminal acts of violence constituting a continuing threat to society." *Id.*

¶ 33 While a prior burglary conviction would not usually indicate the existence of a probability that the defendant would commit future criminal acts of violence constituting a continuing threat to society, it did so in the present case. When Appellant committed the burglary he took five shotguns, two rifles, two pistols and three hunting knives along with several boxes of ammunition. The nature of the items taken relate to and indicate the existence of a probability that Appellant will commit future criminal acts of violence constituting a continuing threat to society and accordingly, the prior burglary conviction was properly used to support the continuing threat aggravating circumstance.

¶ 34 In support of the continuing threat aggravating circumstance the State presented evidence that while incarcerated, Appellant vandalized jail property, made and possessed weapons and threatened law enforcement officers and witnesses. In his ninth proposition, Appellant asserts that the State's use of unadjudicated crimes to support the continuing threat aggravating circumstance was unconstitutional. Appellant acknowledges that this Court has held prior unadjudicated acts of violent conduct are relevant to the determination of whether a defendant is likely to commit future acts of violence that would constitute a continuing threat to society. *See Wackerly v. State,* 2000 OK CR 15, ¶ 52, 12 P.3d 1, 16–17, *cert. denied,* 532 U.S. 1028, 121 S.Ct. 1976, 149 L.Ed.2d 768 (2001). *See also Darks v. State,* 1998 OK CR 15, ¶ 41, 954 P.2d 152, 164. However, he complains that some of the evidence introduced against him was so unreliable that its admission violated due process. We disagree. There was nothing unreliable about the testimony of the various jailers that Appellant vandalized property and possessed hand-made weapons in jail. Undersheriff Henry testified about the contents of letters written by Appellant while in jail. In these letters, he boasted of possessing large amounts of guns and ammunition, he boasted of his own dangerousness, he discussed his gang affiliation and he made threats toward the surviving victims in this case. Appellant complains that the contents of these letters were unreliable because there was no evidence that the representations he made in

them were true. The value of these letters relevant to the aggravating circumstance of continuing threat lies not in the truth of what Appellant asserts, but in the fact that he made such claims. As Appellant's death sentence was not based upon unreliable evidence, this proposition must fail.

¶ 35 Defense counsel hired Joyce Turner, a clinical social worker, to testify in the second stage of trial. He anticipated that she would testify about how the physical and sexual abuse Appellant suffered as a child influenced his subsequent development and behavior. The State filed a motion in limine to prevent Turner from testifying. The trial court reserved ruling on the motion until after Turner was voir dired. During the voir dire examination it was established that Turner was a licensed clinical social worker whose area of expertise was human behavior in the social environment—"how different things that happen to a person have an impact upon them and their subsequent behavior."[8] She testified during voir dire that she believed Appellant had been affected by things that had happened to him as a child. She stated that she had interviewed Appellant and consulted with Dr. Smith, the investigator and with various members of Appellant's family. At the end of the voir dire, the trial court found that Turner was "qualified by training and expertise to testify on the effects of certain behaviors and experiences on children in the general population."[9] However, because Turner was not offering psychological testimony or a diagnosis regarding Appellant, the trial court limited her testimony to generalizations about how children who have been subjected to abuse are at a greater risk for certain behaviors. Appellant complains in his tenth proposition that the trial court unconstitutionally interfered with his right to present mitigating evidence by refusing to allow Turner to testify specifically about how his experiences as a child affected his behavior as an adult.

¶ 36 This Court has held that, "[a] defendant must be permitted to present all relevant mitigating evidence in support of his plea for a sentence less than death." *Ochoa,*

1998 OK CR 41, at ¶ 71, 963 P.2d at 605, *citing Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise." 12 O.S.1991, § 2702. This Court has held that social workers may qualify as expert witnesses and when they do they should be permitted to render relevant expert opinions within their field of expertise. *Salazar v. State,* 1996 OK CR 25, ¶¶ 32–33, 919 P.2d 1120, 1129, *cert. denied,* 528 U.S. 895, 120 S.Ct. 226, 145 L.Ed.2d 190 (1999).

¶ 37 Based upon the voir dire of Turner, it is clear that the trial court was correct in ruling that she was qualified by training and expertise to testify as an expert witness regarding the effects of certain behaviors and experiences on children. However, the court's decision to limit her testimony to hypothetical generalizations because she did not intend to proffer a psychological diagnosis of Appellant was in error as there was nothing in the record to indicate that a psychological diagnosis was necessary to Turner's expert opinion regarding how Appellant's experiences as a child affected his behavior as an adult. Turner testified she had specialized knowledge which she acquired through formal education. She further testified that she had developed skills through training and working in the field. She described how she arrived at her opinions regarding Appellant. Turner was qualified to render relevant expert opinions within her field of expertise and the trial court erred in limiting her testimony.

¶ 38 If Turner had been the only witness testifying in second stage, the trial court's improper limitation on her testimony may well have deprived Appellant of a reliable sentencing proceeding. However, when the defense's second stage case is reviewed in whole, it appears that this error can be found to have been harmless beyond a reasonable doubt. Turner was allowed to testify about

---

8. Trial Transcript at p. 2508.

9. Trial Transcript at p. 2527.

how physical and sexual abuse and abandonment of children can affect their behavior as adults. Dr. Smith offered a psychological evaluation of Appellant and Appellant's stepmother and other relatives testified that Appellant had suffered from the same types of abuse and abandonment discussed by Turner. Thus, the jury was provided evidence from which it could conclude that Appellant's adult behavior may have been influenced by his childhood abuse. Accordingly, we find that under these circumstances, the trial court's error was harmless beyond a reasonable doubt.

¶ 39 In his eleventh proposition, Appellant claims the evidence was insufficient to sustain the jury's finding that he knowingly created a great risk of death to more than one person. "When the sufficiency of the evidence of an aggravating circumstance is challenged on appeal, this Court reviews the evidence in the light most favorable to the State to determine if any rational trier of fact could have found the aggravating circumstance beyond a reasonable doubt." *Washington,* 1999 OK CR 22, at ¶ 44, 989 P.2d at 974. We have held the great risk of death aggravating circumstance is proved by acts of a defendant which create a great risk of death to another in close proximity, in terms of time, location, and intent to the killing. *Thornburg v. State,* 1999 OK CR 32, ¶ 42, 985 P.2d 1234, 1248, *cert. denied,* 529 U.S. 1113, 120 S.Ct. 1970, 146 L.Ed.2d 800 (2000). This Court has also held that,

> [E]vidence is sufficient to support the aggravating circumstance of knowingly creating a great risk of death to more than one person where a defendant during the continuing course of conduct in which a murder is committed, threatens the life of another and has the apparent ability and means of taking that person's life.

*Smith v. State,* 1986 OK CR 158, ¶ 31, 727 P.2d 1366, 1373, *cert. denied,* 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 780 (1987). Appellant acknowledges that both Bornt and Hair testified that he threatened them. Bornt testified that Appellant threatened to kill him and Hair testified that she overheard Appellant and the other assailants discuss killing them all and taking the baby to a shelter. Even Appellant in his third interview with the police said that they planned to take Bornt, Hair and Neiman to the country to kill them before they changed their minds and decided that Bornt and Hair did not need to die because they said they would not tell. The evidence that Appellant threatened to kill all three victims and had the apparent ability to do so if they did not cooperate with him provides sufficient evidence from which the jury could have found the existence of the great risk of death aggravating circumstance beyond a reasonable doubt.

¶ 40 In his twelfth proposition, Appellant argues that the heinous, atrocious or cruel aggravating circumstance as applied in Oklahoma does not constitutionally narrow the class of murderers eligible for the death penalty. He specifically complains that under the present definition in the jury instructions any person of ordinary sensibilities could find any murder to be heinous, atrocious or cruel. This Court has rejected similar attacks upon the constitutionality of this aggravating circumstance. *See Le v. State,* 1997 OK CR 55, ¶¶ 41–45, 947 P.2d 535, 552–53, *cert. denied,* 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998). *See also Hooker v. State,* 1994 OK CR 75, ¶ 44, 887 P.2d 1351, 1364–65, *cert. denied,* 516 U.S. 858, 116 S.Ct. 164, 133 L.Ed.2d 106 (1995); *Revilla v. State,* 1994 OK CR 24, ¶ 42, 877 P.2d 1143, 1154–55, *cert. denied,* 513 U.S. 1096, 115 S.Ct. 764, 130 L.Ed.2d 661 (1995); *Berget v. State,* 1991 OK CR 121, ¶¶ 29–34, 824 P.2d 364, 372–74, *cert. denied,* 506 U.S. 841, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992). In each of these cases we found that the instructions given regarding the heinous, atrocious or cruel aggravating circumstance sufficiently narrow its application and pass constitutional muster. Appellant has not persuaded us to hold otherwise.

¶ 41 In his thirteenth assignment of error, Appellant argues the continuing threat aggravator is unconstitutional as it is vague and overbroad. We have previously upheld the constitutionality of this aggravator finding it neither vague nor overbroad. *See Williams v. State,* 2001 OK CR 9, ¶ 82, 22 P.3d 702, 722–23, *cert. denied,* —— U.S. ——, 122 S.Ct. 836, 151 L.Ed.2d 716 (2002); *Young v. State,* 2000 OK CR 17, ¶ 75, 12 P.3d 20, 42, *cert.*

denied, 532 U.S. 1055, 121 S.Ct. 2200, 149 L.Ed.2d 1030 (2001); *Wilson v. State,* 1998 OK CR 73, ¶ 78, 983 P.2d 448, 466, *cert. denied,* 528 U.S. 904, 120 S.Ct. 244, 145 L.Ed.2d 205 (1999); *Toles v. State,* 1997 OK CR 45, ¶ 62, 947 P.2d 180, 192, *cert. denied,* 524 U.S. 958, 118 S.Ct. 2380, 141 L.Ed.2d 746 (1998). We decline to reconsider our previous decisions at this time.

 ¶ 42 Appellant argues in his fourteenth proposition that the Eighth Amendment bars his execution because he suffers from mental illness which diminished his culpability. Both the defense and the prosecution presented evidence regarding Appellant's mental health. However, Appellant points to no testimony, by any witness, which indicates that his mental illness was such that it could be found to have diminished his culpability. Although a review of the record reveals conflicting testimony regarding the extent of Appellant's mental illness, we continue to hold that, "[i]t is the province of the jury to resolve conflicts and to reconcile testimony concerning the motives of the witnesses and other circumstances of the case." *Bernay v. State,* 1999 OK CR 46, ¶ 23, 989 P.2d 998, 1008, *cert. denied,* 531 U.S. 834, 121 S.Ct. 92, 148 L.Ed.2d 52 (2000). "Further, this Court will accept all reasonable inferences and credibility choices that support the jury's verdict." *Id.* Thus, we accept the jury's conclusion that Appellant harbored a culpability deserving of the death penalty.

### CUMULATIVE ERROR

¶ 43 In his final proposition, Appellant asks this Court to review the aggregate impact of the errors in his case in addition to reviewing the errors individually.

This Court has held that where there is no error present, there can be no accumulation of error. However, when there have been numerous irregularities during the course of the trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors was to deny the defendant a fair trial.

(citation omitted) *Smith v. State,* 1996 OK CR 50, ¶ 62, 932 P.2d 521, 538, *cert. denied,*

521 U.S. 1124, 117 S.Ct. 2522, 138 L.Ed.2d 1023 (1997). *See also Bechtel v. State,* 1987 OK CR 126, ¶ 12, 738 P.2d 559, 561. While it can be found in the present case that there were irregularities during the course of the trial, even taken together, these cannot be found to have been so great as to have denied Appellant a fair trial. Accordingly, after reviewing the errors in aggregate, we find that they were harmless beyond a reasonable doubt. Relief is not warranted.

### MANDATORY SENTENCE REVIEW

¶ 44 In accordance with our statutory duty, we must now determine whether the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor, and also whether the evidence supports the jury's finding of the alleged statutory aggravating circumstances. *See* 21 O.S. 2001, § 701.13(C). We are satisfied that neither passion, prejudice nor any other arbitrary factor contributed to the jury's sentencing determination. After carefully reviewing the evidence presented, we also find that it supported the jury's finding of the aggravating circumstances.

¶ 45 Finding no error warranting reversal or modification, Appellant's Judgment and Sentence is **AFFIRMED.**

LUMPKIN, P.J. and CHAPEL, J. concur in results.

JOHNSON, V.P.J. and LILE, J. concur.

CHAPEL, Judge, Concurs in Results.

¶ 1 I concur in the majority opinion except for those portions which resolve Proposition IX concerning the use of unadjudicated offenses to support the continuing threat aggravator and Proposition IV concerning the *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, claim. I would invalidate the continuing threat aggravator found in this case. However, I would affirm the sentence of death, as there was sufficient evidence to support the other aggravators.