2002 OK CR 31

James J. FITZGERALD, Appellant,

v.

STATE of Oklahoma, Appellee.

No. D–2000–1502.

Court of Criminal Appeals of Oklahoma.

Aug. 21, 2002.

Rehearing Dismissed Sept. 26, 2002.

Silas Lyman, G. Lynn Burch, III, Kathy Lafortune, Oklahoma Indigent Defense System, Capital Trial Division, Sapulpa, OK, Attorneys For Defendant at trial.

Tim Harris, District Attorney, Doug Drummond, First Assistant District Attorney, Tulsa, OK, Attorneys for the State at trial.

G. Lynn Burch, III, Capital Trial Division–Tulsa, Oklahoma Indigent Defense System, Norman, OK, Attorney for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Nancy E. Connally, Assistant Attorney General, Oklahoma City, OK, Attorneys for Appellee on appeal.

## OPINION

CHAPEL, Judge:

¶ 1 James Fitzgerald was tried by jury and convicted of Count I: Robbery with a Firearm in violation of 21 O.S.1991, § 801; Count II: Attempted Robbery with a Firearm in violation of 21 O.S.1991, § 801; Count III: First Degree Murder in violation of 21 O.S. 1991, § 701.7; and Count IV: Robbery with a Firearm in violation of 21 O.S.1991, § 801 in Tulsa County District Court, Case No. CF–94–3451. The jury found three aggravating circumstances[1] and recommended a

---

1. The three aggravators were that: (1) the defendant was previously convicted of a felony involving the use or threat of violence to the person; (2) the defendant committed the murder to avoid lawful arrest or prosecution; and (3) there was a probability that the defendant would commit criminal acts of violence that would constitute a

death sentence for Count III. In accordance with the jury's recommendation, the Honorable E.R. (Ned) Turnbull sentenced Fitzgerald to death on Count III and life imprisonment and a $10,000.00 fine on Counts I, II and IV.

¶ 2 Fitzgerald appealed his Judgments and Sentences to this Court. We affirmed his convictions and sentences for Counts I, II and IV, but vacated his death sentence for Count III because of "pervasive error in the second stage of trial."[2] Pursuant to 21 O.S.Supp.2000, § 701.10a, a new jury was impaneled and new sentencing hearing was conducted before the Honorable J. Michael Gassett on October 17–26, 2000. Finding two of the three alleged aggravators,[3] the jury sentenced Fitzgerald to death and the trial court so ordered. Fitzgerald appeals from that Judgment and Sentence.

¶ 3 The facts of this case are recounted in *Fitzgerald v. State*, 972 P.2d at 1161–62. Stated briefly, Fitzgerald robbed two Tulsa Git–N–Go stores in the early morning hours of July 16, 1994. He attempted to rob a third at 6938 East Pine Street, but had his SKS rifle wrested from him by store clerk William Russell. Fitzgerald then fought with Russell for the gun, and regained its possession. Nevertheless, Russell had been able to escort Fitzgerald out of the store and lock the doors. Fitzgerald then pointed his gun in Russell's direction and fired several shots into the store. One of the bullets killed Russell. After fleeing Oklahoma, Fitzgerald was apprehended in Missouri. He confessed to the two robberies and attempted robbery, but stated that he had never intended to kill Russell.

¶ 4 In Propositions I and II, Fitzgerald claims that the trial court erred by excluding evidence that was admissible either as mitigation or to rebut the "continuing threat" aggravating circumstance. Specifically, Fitzgerald contends that the jury should have been allowed to: (1) see him in his wheelchair; (2) view the entire videotape of his leg being broken; and (3) hear Dr. Cunningham's testimony regarding risk assessment in prison society. "It is settled that a defendant may present in mitigation any aspect of his record or character, and any circumstances of the crime" that could possibly convince a jury that he is entitled to a sentence less than death.[4] Likewise, a defendant is also entitled to present any evidence that may assist in rebutting an aggravating circumstance.[5] We review Fitzgerald's specific claims with these principles in mind.

## A. The Wheelchair

¶ 5 After his original trial but before resentencing, Fitzgerald's leg was severely broken in an incident with Tulsa County Deputies. Fitzgerald was left with limited mobility and must now use a wheelchair or other device to ambulate. He is, however, able to sit in a chair and walk short distances without aid. Based upon this evidence, the trial court ordered that Fitzgerald be seated in a normal chair during trial, and prohibited him from sitting in his wheelchair, because it was "not medically necessary." Fitzgerald argues that this was error because it prohibited him from introducing evidence regarding his limited mobility, which was relevant in mitigation and to rebut the "continuing threat" aggravating circumstance. However, the trial court's ruling did not prohibit the jury from hearing evidence offered by Fitzgerald regarding his medical condition and diminished ability to move about.

¶ 6 The jury viewed the videotape of the leg fracture, received evidence that Fitzgerald could not bear weight on it and need-

---

continuing threat to society. 21 O.S.1991, § 701.12.

2. *Fitzgerald v. State*, 1998 OK CR 68, 972 P.2d 1157, 1161.

3. The jury found that (1) Fitzgerald had been previously convicted of a felony involving the threat or use of violence to the person and (2) the existence of a probability that he would commit criminal acts of violence that would constitute a continuing threat to society. The jury did not find that Fitzgerald committed the murder to avoid lawful arrest or prosecution.

4. *Fitzgerald*, 972 P.2d at 1168.

5. *Id;* (defendant entitled to expert assistance to rebut "continuing threat" aggravating circumstance).

ed an assistive device for ambulation, was instructed that Fitzgerald had limited mobility as a result of his broken leg, and was well informed of those limitations. The trial court did not prohibit any evidence regarding any of his medical conditions from being presented to the jury. Thus, we cannot say that the trial court's order prohibiting Fitzgerald from sitting in the wheelchair in the courtroom was error. This argument is denied.

### B. The Videotape

¶ 7 Fitzgerald's leg was broken in an incident at Tulsa County Jail. Fitzgerald had been taken by jailors to receive a court-ordered insulin injection for his diabetes, prior to which his blood had to be drawn to determine its sugar level. Fitzgerald refused to have his blood drawn. His leg was severely broken when several Tulsa County Deputies attempted to restrain him for the procedure.

¶ 8 This incident, captured on videotape, was introduced to the jury in edited form. That version shows the leg breaking and Fitzgerald lying on the floor compliantly for a short while, whereas the unedited videotape shows Fitzgerald lying on the floor for extended time. Fitzgerald now asserts that showing the jury the edited videotape was error. However, Fitzgerald informed the court at trial that he would be willing to stop the videotape after two minutes and ten seconds. This concession waived any error in the videotape's admission to rebut the continuing threat aggravating circumstance.[6] Additionally, we find Fitzgerald was not deprived of his right to present mitigating evidence by admission of the edited videotape, as the excised portion added nothing to the evidence that was not already apparent. This argument is denied.

6. See Cheatham v. State, 1995 OK CR 32, 900 P.2d 414, 427 (failure to object to admission of evidence at its introduction waives error for appeal).

7. O.R. 1085–97.

8. O.R. 1085–97. In fact, the offer of proof stated that Dr. Cunningham had been "contacted by defense counsel for James Fitzgerald regarding his willingness to serve as a forensic psychology expert in evaluating the defendant and testifying

### C. Dr. Mark Cunningham

¶ 9 At the State's request, the trial court prohibited Fitzgerald from calling Dr. Cunningham to testify. Fitzgerald had filed an Offer of Proof of the Proposed Testimony of Dr. Mark Cunningham,[7] stating that Cunningham would testify regarding "violence risk assessment." The Offer of Proof laboriously detailed why Cunningham was an expert, what violence risk assessment was, how it is performed, and why it is the best way to determine an inmate's level of risk. As the Offer of Proof did not discuss Fitzgerald or his level of risk, the trial court ordered Fitzgerald to produce that additional information.[8] Fitzgerald then filed a Response to the State's Motion in Limine Regarding Testimony of Dr. Mark Cunningham[9] which reiterated the highlights of the Offer of Proof and argued that Dr. Cunningham's testimony was admissible, but failed to offer any additional information over his particularized risk assessment. The trial court then granted the State's motion to prohibit Dr. Cunningham from testifying.

¶ 10 This Court had originally reversed and remanded Fitzgerald's sentence for resentencing-in part, because he was prohibited from presenting expert testimony to rebut the "continuing threat" aggravating circumstance and discuss his future dangerousness.[10] In that opinion, this Court discussed the necessity and importance of hiring such an expert.[11] In response, Fitzgerald "contacted," possibly hired Dr. Cunningham to conduct a risk assessment for him, and perhaps even retained Dr. Cunningham to serve as a witness for the defense. However, nothing in either the Offer of Proof or Response indicates that Cunningham performed risk assessment on Fitzgerald or how he

at trial regarding future dangerousness and a risk assessment." The only other statement relating specifically to Fitzgerald stated that it is the defense's "intention" to solicit a "conservative particularization" regarding Mr. Fitzgerald.

9. O.R. 1099–1103.

10. Fitzgerald, 972 P.2d at 1169.

11. Id.

would testify regarding such an assessment. Thus, the trial court correctly prohibited Dr. Cunningham from testifying [12] and this Proposition is denied.

¶ 11 In Proposition III, Fitzgerald asserts that it was error to admit the first stage evidence from his May 1996 jury trial to his capital resentencing. The second stage admissibility of such previously admitted evidence is governed by 21 O.S.2001, § 701.10a, which in pertinent part provides: "All exhibits and a transcript of all testimony and other evidence properly admitted in the prior trial and sentencing shall be admissible in the new sentencing proceeding[.]" This statute requires that all *properly* admitted evidence from the original trial be admitted at the resentencing trial,[13] but preserves a defendant's ability to challenge that underlying (and therefore ongoing) admissibility.[14]

¶ 12 Relying on *Howell v. State*,[15] Fitzgerald argues that the evidence must also only be relevant to punishment issues. However, *Howell* is not binding precedent as the opinion only received a majority of votes for the result from this Court.[16] Moreover, we find *Howell's* language—limiting the admission of evidence in a capital resentencing trial to issues relating to punishment—to be inconsistent with 21 O.S.2001, § 701.10a and its interpretation in *Humphreys v. State.* We consider Fitzgerald's argument under that authority.

¶ 13 Fitzgerald claims that a litany of evidence was improperly admitted at his re-sentencing trial.[17] In doing so, he uniformly argues here, as he did at trial, that the complained of evidence was irrelevant to re-sentencing issues and not that it was improperly admitted at the first trial. Indeed, Fitzgerald does not claim that any of the evidence was improperly admitted at his first trial. The closest he comes to meeting this requirement is when he asserts that the evidence is irrelevant, more prejudicial than probative, and cumulative. However, inspection of his arguments reveals their erroneous foundation: that the admission of evidence at resentencing is limited to evidence bearing directly on punishment. Thus, since Fitzgerald fails to offer any argument conceiving how any of the evidence was improperly admitted at his original trial, this Proposition is denied.[18]

¶ 14 In Proposition IV, Fitzgerald asserts that victim impact evidence serves as an unconstitutional "super" aggravating circumstance that has no place in Oklahoma's capital sentencing scheme. This argument has been roundly rejected by this Court and Fitzgerald does not persuade us to reconsider that ruling.[19] Moreover, the victim impact evidence in this case was properly limited to the financial, emotional, psychological and physical effects of the victim's murder on his mother, father and sister. This Proposition is denied.

¶ 15 In Proposition V, Fitzgerald contends that the "continuing threat" aggravating cir-

12. *Hooker v. State*, 1994 OK CR 75, 887 P.2d 1351, 1367, *cert. denied*, 516 U.S. 858, 116 S.Ct. 164, 133 L.Ed.2d 106 (1995) (defense expert properly prohibited from testifying to opinions not individualized to the defendant or his crime).

13. *Humphreys v. State*, 1997 OK CR 59, 947 P.2d 565, 573, *cert. denied*, 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998).

14. *Id.*

15. 1998 OK CR 53, 967 P.2d 1221, *cert. denied*, 528 U.S. 834, 120 S.Ct. 93, 145 L.Ed.2d 79 (1999).

16. *Id;* (all of the Judges concurred in the result of the opinion).

17. Specifically, Fitzgerald argued at trial and on appeal that the following evidence was improperly admitted: (1) the surveillance and crime scene videotapes and photographs; (2) ballistics and firearms testimony and evidence; (3) autopsy and crime scene photographs, diagrams and protocol; (4) a letter written by Fitzgerald regarding the assault rifle; (5) an ATF receipt; (6) transcripts of Fitzgerald's statements to law enforcement; (7) judgments and sentences for the robbery convictions; (8) testimony about how Fitzgerald got the assault rifle; (9) testimony about the night of the murder and Fitzgerald's arrest; and (10) the medical examiner's testimony.

18. Additionally, all of the complained-of evidence was properly admitted.

19. *Selsor v. State*, 2000 OK CR 9, 2 P.3d 344, 352, *cert. denied*, 532 U.S. 1039, 121 S.Ct. 2002, 149 L.Ed.2d 1004 (2001).

cumstance is unconstitutional on its face and as applied. This Court and the Tenth Circuit have upheld the constitutionality of this aggravating circumstance [20] and Fitzgerald gives us no reason to revisit the issue. This Proposition is denied.

¶ 16 In Proposition VI, Fitzgerald claims that his constitutional rights were violated because the State was allowed to use his former violent felony convictions to support both the "prior violent felony" and "continuing threat" aggravating circumstances. This claim has previously been addressed and rejected by this Court because the evidence of prior convictions to support these two aggravating circumstances does not "show the same aspect of appellant or his crime." [21] The same is true here and this Proposition is denied.

¶ 17 Fitzgerald claims in Proposition VIII that the Eighth and Fourteenth Amendments to United States Constitution were violated because the permissive language of the mitigating circumstance instructions did not require the jury to consider his mitigating evidence. The jury was given Oklahoma Uniform Jury Instructions 4–78 and 4–79 on mitigating evidence [22] as requested by Fitzgerald. These instructions are constitutional and have withstood this specific challenge in the past.[23]

¶ 18 In Proposition IX, Fitzgerald asserts that the accumulation of error in his resentencing trial mandates relief. Having found no individual error there can be no accumulation of error.[24] Accordingly, this Proposition is denied.

## MANDATORY SENTENCE REVIEW

¶ 19 In Proposition VII, Fitzgerald argues that his death sentence was imposed as a result of passion, prejudice and arbitrary factors. He bases his argument on the errors raised and rejected in this appeal. However, we must review this claim to determine: (1) whether the death sentence was imposed under the influence of passion, prejudice or other arbitrary factor, and (2) whether the aggravating circumstances were supported by the evidence.[25] In regard to the first inquiry, we find that Fitzgerald's death sentence did not result from passion, prejudice or other arbitrary factor.

¶ 20 In regard to the second inquiry, the jury was instructed on three aggravating circumstances and found the existence of two: (1) that Fitzgerald had been previously convicted of a felony involving the threat or use of violence to the person and (2) the existence of a probability that he would commit criminal acts of violence that would constitute a continuing threat to society. We find that both aggravating circumstances were supported by sufficient evidence.[26]

¶ 21 Additionally, the jury was instructed on eleven (11) specific mitigating circumstances [27] and instructed to consider

20. Walker v. State, 1994 OK CR 66, 887 P.2d 301, 320, cert. denied, 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995) and Nguyen v. Reynolds, 131 F.3d 1340, 1354 (10th Cir.1997), cert. denied, 525 U.S. 852, 119 S.Ct. 128, 142 L.Ed.2d 103 (1998).

21. Smith v. State, 1991 OK CR 100, 819 P.2d 270, 278, cert. denied, 504 U.S. 959, 112 S.Ct. 2312, 119 L.Ed.2d 232 (1992).

22. Instructions XV and XVI in the original record.

23. Johnson v. State, 1996 OK CR 36, 928 P.2d 309, 317, cert. denied, 522 U.S. 832, 118 S.Ct. 99, 139 L.Ed.2d 54 (1997).

24. Humphreys, 947 P.2d at 578.

25. 21 O.S.2001, 701.13(C).

26. This evidence included several prior felony convictions including some involving the threat or use of violence to a person, the circumstances of the crime, and letters and phone calls made by Fitzgerald discussing a possible escape.

27. These included: (1) that James Fitzgerald was diagnosed with diabetes at age 11 and must take daily insulin injections; (2) that in 1985 James Fitzgerald suffered a gunshot wound to the head that resulted in physical injury to his brain; (3) that prior to the 1985 gunshot wound to his head, James Fitzgerald was not convicted of any crimes involving violence; (4) that immediately following his arrest in this case, James Fitzgerald took sole responsibility for the armed robberies, attempted armed robbery, and the murder of William Russell; (5) that subsequent to his arrest in this case and subsequent thereto, James Fitzgerald expressed remorse over his actions; (6) that immediately following his arrest in this case

"any other" mitigating circumstances that were present. Upon reviewing the record, we find that the aggravating circumstances outweighed the mitigating circumstances and that Fitzgerald's death sentence was factually substantiated and appropriate. Accordingly, the Judgment and Sentence of the trial court is **AFFIRMED.**

LUMPKIN, P.J., JOHNSON, V.P.J., STRUBHAR and LILE, JJ., concur.

and subsequent thereto, James Fitzgerald expressed remorse over his actions; (7) that in 1996, while in the custody of the Tulsa County Detention Center, James Fitzgerald suffered a fracture of his left femur which has hampered his mobility and causes him daily discomfort; (8) that James Fitzgerald has significant long term relationships with members of his family; (9) that James Fitzgerald's life has value to his family; (10) that James Fitzgerald comes from a dysfunctional family; and (11) that in 1976, while in the custody of the Nebraska Department of Corrections, James Fitzgerald was housed in a special unit to protect his safety.