Michael B. ROSS, by his next friend, Gerard A. SMYTH, in his official capacity as Chief Public Defender, Office of the Chief Public Defender, State of Connecticut, Petitioner,

v.

Theresa C. LANTZ, Commissioner, Connecticut Department of Corrections, et al., Respondents.

No. 05–CV–116 (RNC).

United States District Court, D. Connecticut.

Jan. 25, 2005.

Hubert J. Santos, Santos & Seeley, Patrick J. Culligan, State of Connecticut Office of the Chief Public Defender, Hartford, CT, US Court of Appeals, Office of the Clerk US Courthouse, New York, NY, for Petitioners.

Harry David Weller, Michael E. O'Hare, Chief State Attorney Office, Jo Anne Sulik, Chief State Attorney Office, Civil Litigation Bureau, Rocky Hill, CT, Kevin T. Kane, State of Connecticut Office of the State's Attorney, New London, CT, for Respondents.

### RULING AND ORDER

CHATIGNY, District Judge.

The Office of the Chief Public Defender for the State of Connecticut ("the Office") brings this action for a writ of habeas corpus on behalf of its long-time client, Michael B. Ross, who has "volunteered" to be executed in two days after nearly twenty years' imprisonment in solitary confinement on death row. Ross has stated emphatically that he would rather be executed than continue to try to get his death sentence set aside, and he has retained private counsel to help him convince courts and others that he is competent to make this irrevocable decision. The Office, which has represented Ross for most of the past twenty years, claims that it has standing to act as his next friend because he has a mental disease or defect that prevents him from making a rational choice to forego legal proceedings—in other words, a mental disease or defect that makes his purported "choice" illusory—and that the severe, debilitating effects of his decades-long solitary confinement on death row render his purport-

ed "waiver" of potentially lifesaving legal proceedings involuntary. Respondents contend that the action must be dismissed for lack of subject matter jurisdiction on the ground that the Office's claim to next-friend status has been properly rejected by the Connecticut Supreme Court following an adequate competency hearing in the Connecticut Superior Court. *See State v. Ross*, 272 Conn. 577, 863 A.2d 654 (Conn.2005). In bench rulings rendered during a hearing today, I denied Respondents' motion to dismiss, granted the Office's request to proceed as Ross's next friend, ordered a competency hearing to be held, and granted the Office's motion for a stay of Ross's execution pending the outcome of the competency hearing. Respondents have asked me to issue a written order to facilitate appellate review of my rulings, especially the one granting the stay. This memorandum is the product of a hurried attempt to provide all concerned with a written statement of the basis for my rulings. It is no substitute for review of the hearing transcript, which is in the process of being prepared and will be available tomorrow.[1]

*The Office Has Satisfied the Requirements for Next Friend Standing and the Court Therefore Has Subject Matter Jurisdiction*

██ In habeas cases involving death row "volunteers," next friend standing may be granted if the condemned prisoner is unable to litigate his own case due to mental incapacity. *Whitmore v. Arkansas*, 495 U.S. 149, 163, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). The standard for competence to waive legal proceedings in a capital case is set forth in *Rees v. Peyton*, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966). The *Rees* standard requires courts

to determine "whether [the condemned prisoner] has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder or defect which may substantially affect his capacity in the premises." *Id.* at 314, 86 S.Ct. 1505. The Second Circuit has not been called on to apply this standard. However, other Circuit Courts construe the Supreme Court's formulation of the standard to encompass the following three questions:

(1) Is the person suffering from a mental disease or defect?

(2) If so, does it prevent him from understanding his legal position and the options available to him? And,

(3) If the disease or defect does not prevent the person from understanding his legal position and available options, does it nevertheless prevent him from making a rational choice among his options?

*See Rumbaugh v. Procunier*, 753 F.2d 395, 398 (5th Cir.1985); *Smith ex rel. Mo. Pub. Defender Comm'n v. Armontrout*, 812 F.2d 1050, 1057 (8th Cir.1987). Next friend standing may be granted if the Court is provided with "meaningful evidence" that the prisoner is not competent. *See Whitmore*, 495 U.S. at 166, 110 S.Ct. 1717.

██ The evidence presented by the Office to support its claim that Ross is not competent under the *Rees* standard is more than sufficient to satisfy its initial burden of producing "meaningful evidence." The Office has proffered voluminous documentary evidence. At today's hearing, the Office presented the testimo-

---

1. As I noted at today's hearing, my analysis of the issues presented by the petition has been aided by Judge Berzon's concurring opinion in *Dennis ex rel. Butko v. Budge*, 378 F.3d 880, 895 (9th Cir.2004).

ny of Dr. Stuart Grassian, a well-qualified expert, who reviewed and discussed the documentary proof. The gist of his testimony is that Ross has a mental disease or defect (which is undisputed); the disease or defect does not significantly affect his ability to understand his legal position and available options; but it does prevent him from making a rational choice to forego further legal proceedings. Dr. Grassian's testimony at the hearing, and the evidence in the written proffer, are more than adequate to raise genuine issues as to Ross's capacity to make a rational choice and the voluntariness of the choice he claims to have made. On the record before me, then, the evidence must be regarded as sufficient to support the Office's request for next friend standing.[2]

█ Respondents contend that I am bound by the Connecticut Supreme Court's determination that the documentary evidence proffered by the Office on the issue of Ross's competence is not "meaningful." They rely principally on *Demosthenes v. Baal*, 495 U.S. 731, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990). In that case, the Supreme Court vacated a stay of execution granted by the Ninth Circuit Court of Appeals at the request of the condemned prisoner's parents. The Supreme Court relied on a state court's finding that the prisoner was competent to waive his right to further legal proceedings. The competency finding was fairly supported by the record, and thus entitled to a presumption of correctness under the version of 28 U.S.C. § 2254(d) then in effect, and the only evidence of incompetency contained in the record was a psychiatrist's affidavit that was merely conclusory and equivocal.

*See Demosthenes*, 495 U.S. at 736, 110 S.Ct. 2223.

*Demosthenes* is clearly distinguishable with regard to the probative value of the evidence supporting the state court's competency finding. Here, the Superior Court appointed a single psychiatrist to examine Ross, Dr. Michael Norko. After receiving a report from Dr. Norko, the Court conducted a non-adversarial hearing at which Dr. Norko was questioned by the Court, the State's Attorney, and Ross's retained counsel. (*See* Pet.App., Doc. 6.) Crediting Dr. Norko's opinion, the Court found that Ross fully understands his legal position and available options. But no particularized finding was made concerning Ross's volitional capacity, as required at the third step in the *Rumbaugh/Smith* analysis, evidently because Dr. Norko did not focus on the issue. In fact, when Dr. Norko was asked if he is familiar with "SHU Syndrome" (short for "Special Housing Unit Syndrome"), he answered "No." (Pet.App., Doc. 6 at 45.) This surprising admission on the part of the only psychiatrist to examine Ross in connection with the competency hearing is particularly troubling. Dr. Grassian, a nationally-recognized expert on the subject, has testified that long-term solitary confinement is known to lead to suicidal despair, and that Ross fits the profile of a prisoner experiencing suicidal despair as a result of long-term solitary confinement. Dr. Grassian's opinion that Ross's decision to forego legal proceedings appears to be driven by suicidal despair, rather than an exercise of free will, finds support in Ross's history of multiple suicide attempts, as well as his correspon-

---

**2.** Respondents assert that the Office does not qualify for next friend standing because it is not acting in Ross's best interest but pursuing an anti-death penalty agenda, which is in conflict with his best interest. I believe the Office is rightly concerned that Ross lacks capacity to make a voluntary choice to forego legal proceedings, and that his decision to forego further proceedings is not voluntary. Accordingly, I find that the Office is acting in a manner consistent with his best interest.

dence and other writings contained in the Office's proffer, in which he expresses a strong desire and serious intention to commit suicide.

Respondents seem to contend that even if the Superior Court failed to sufficiently inquire into Ross's volitional capacity, its competency finding is adequately supported by Ross's statements and demeanor and is therefore binding. The Superior Court did rely heavily on Ross's statements and demeanor, as courts customarily do in assessing a defendant's competency to be tried or plead guilty. Dr. Grassian has explained, however, that in determining whether Ross is competent to choose to forego legal proceedings and accept execution it would be a mistake to rely uncritically on his statements and demeanor because he has a superior ability to present himself as fully competent, in other words, to "malinger good," and is highly motivated to make a convincing presentation. Dr. Grassian's testimony on this point finds support in Ross's writings in which he privately admits that, although he has stated publicly that his willingness to accept execution is motivated by a desire to spare his victims' families further emotional harm, his primary motivation actually has been a desire to put himself out of his own misery, which has been increasingly unbearable. (Pet.App., Doc. 17, Letter from Ross to Elliott of 5/24/98, at 3.) Given Dr. Grassian's testimony, and Ross's private admission, there is an unacceptable risk that the state court's heavy reliance on Ross's statements and demeanor is misplaced.

*Demosthenes* is also clearly distinguishable because the evidence of incompetency in this case consists of much more than a single, conclusory, equivocal affidavit. In addition to Dr. Grassian's testimony, report and writings, the Office presents the proposed testimony of another psychiatrist, Dr. Eric Goldsmith. If permitted to testify, he would state that Dr. Norko failed to adequately explore the voluntariness of Ross's decision to accept execution and that the voluntariness of the decision is subject to serious question. The Office's written proffer also includes Ross's writings, which appear to provide substantial support for the view that Ross's purported waiver is not voluntary. In addition, the Office presents numerous affidavits of responsible persons whose interactions with Ross cause them to believe that he is not competent to make this irrevocable decision.

In *Demosthenes*, the Supreme Court rightly emphasized that before granting a stay of execution, "federal courts must make certain that an adequate basis exists for the exercise of federal power." *Demosthenes*, 495 U.S. at 737, 110 S.Ct. 2223. The Court granted the motion to vacate the stay entered by the Court of Appeals because "that basis was plainly lacking." *Id.* In this case, the state court did not adequately inquire into the volitional capacity prong of the *Rees* standard, as implemented in *Rumbaugh* and *Smith,* and its competency finding therefore lacks the reliability required to sustain a final decision in this context. Furthermore, the evidence presented by the Office, if credited, would support a finding that Ross is not competent under the *Rees* standard. For these reasons, an evidentiary hearing on the issue of Ross's competence is amply justified.

### There Is No Bar to An Evidentiary Hearing

Respondents seem to contend that under the opening clause of 28 U.S.C. § 2254(e)(2), the Office cannot obtain an evidentiary hearing because it failed to act with due diligence to develop a factual basis for its claim before coming to federal

court. The issue of who bears responsibility for fully developing a factual record on the issue of a condemned prisoner's competence to choose to accept execution appears to be open. In any case, a petitioner's failure to develop the factual basis for its claim in state court does not preclude it from obtaining an evidentiary hearing if it made a "reasonable effort" to commence or continue state proceedings. *Williams v. Taylor*, 529 U.S. 420, 443, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). In my view, the effort put forth by the Office in this case was reasonable in the circumstances. On learning that Ross had "volunteered" to be executed, the Office presented a next friend petition to the Superior Court. The petition was presented in advance of the competency hearing but the Office was not allowed to participate. When the petition was denied, the Office sought relief from the Connecticut Supreme Court, but was unsuccessful. More was not required on the part of the Office to preserve a right to obtain an evidentiary hearing in this Court.

### A Stay of the Execution is Necessary

The federal habeas corpus stay provision, 28 U.S.C. § 2251, permits a stay of an execution to be granted by a judge "before whom a habeas proceeding is pending." The Office contends that a stay is necessary because there would be a miscarriage of justice if Ross were executed before the Office's challenge to his competency to "volunteer" for execution can be heard and adjudicated. Given what I heard at today's hearing concerning the work that needs to be done to prepare for and conduct a full and fair hearing, it will not be possible to make a decision on the merits for at least a month. A stay of the execution is therefore necessary to permit due consideration of the merits.

### Conclusion

For all the reasons set forth above and in my comments from the bench during today's hearing, I am convinced that the Office should be granted next friend standing, that an evidentiary hearing on the issue of Ross's competence should be conducted, and that pending the outcome of the hearing his execution should be stayed.