2006 OK CR 35

**Michael Edward HOOPER, Appellant**

v.

**STATE of Oklahoma, Appellee.**

**No. D–2004–1098.**

Court of Criminal Appeals of Oklahoma.

Aug. 18, 2006.

Mark Henricksen, El Reno, OK, Julie Gardner, Norman, OK, attorneys for defendant at trial.

Cathy Stocker, District Attorney, Michael Gahan, Assistant District Attorney, El Reno, OK, attorneys for the State at trial.

Traci J. Quick, Lee Ann Peters, Capital Direct Appeals Division, Oklahoma Indigent Defense System, Norman, OK, attorneys for appellant on appeal.

W.A. Drew Edmondson, Attorney General Of Oklahoma, Robert Whittaker, Assistant Attorney General, Oklahoma City, OK, attorneys for appellee on appeal.

1. Hooper's trial was held in June, 1995. The crimes occurred in December, 1993.

2. *Hooper v. State*, 1997 OK CR 64, 947 P.2d 1090, *cert. denied*, 524 U.S. 943, 118 S.Ct. 2353, 141 L.Ed.2d 722 (1998).

3. *Hooper v. State*, 1998 OK CR 22, 957 P.2d 120.

*OPINION*

CHAPEL, Presiding Judge.

¶ 1 Michael Edward Hooper was tried by a jury and convicted of Counts I–III, Murder in the First Degree, in violation of 21 O.S. 1991, § 701.7(A), in the District Court of Canadian County, Case No. CF–93–601.[1] The jury found as to Count I that Hooper (1) knowingly created a great risk of death to more than one person, and (2) probably would commit criminal acts of violence that would constitute a continuing threat to society; as to Count II, that Hooper (1) knowingly created a great risk of death to more than one person, (2) probably would commit criminal acts of violence that would constitute a continuing threat to society, and (3) committed the murder in order to avoid or prevent a lawful arrest or prosecution; and as to Count III, that Hooper (1) knowingly created a great risk of death to more than one person, and (2) probably would commit criminal acts of violence that would constitute a continuing threat to society. In accordance with the jury's recommendation, the Honorable Edward C. Cunningham sentenced Hooper to death in all three counts. This Court affirmed Hooper's convictions and sentences, and the United States Supreme Court denied certiorari.[2] Hooper's post-conviction appeal was denied.[3] The Tenth Circuit Court of Appeals affirmed the federal district court's grant of a new sentencing hearing based on ineffective assistance of counsel.[4] The case was remanded to the District Court of Canadian County for resentencing.

¶ 2 After the remand Hooper filed a *pro se* pleading, "Motion for Negotiated Plea and Waiver of Rights", asking that the sentence of death be upheld.[5] This motion was properly treated as a waiver of Hooper's rights to a jury trial on resentencing and to present mitigating evidence. In April, 2004, the trial

4. *Hooper v. Mullin*, 314 F.3d 1162 (10th Cir. 2002). The United States Supreme Court denied certiorari. *Hooper v. Mullin*, 540 U.S. 838, 124 S.Ct. 97, 157 L.Ed.2d 70 (2003).

5. OR. 608. The sentence of death was no longer in effect, and the trial court had no authority to uphold it.

court ordered an independent competency evaluation. At a July 24, 2004, hearing, Hooper waived his right to a jury trial on the issue of competency. The trial court reviewed the competency evaluation submitted by the expert who had been appointed by the court, and found that Hooper was competent. The trial court separately considered Hooper's waiver of a jury trial for resentencing. A sentencing hearing was held on September 8 and September 30, 2004, and the trial court imposed the death penalty on all three counts. At the formal sentencing hearing on October 27, 2004, Hooper waived his right to direct appellate review.

¶ 3 This Court has carefully scrutinized cases in which a defendant essentially volunteers for the death penalty, by waiving his rights to a jury trial, presentation of mitigating evidence, and direct appellate review. We have developed a strict procedure which must be followed in such cases. This is ultimately designed to ensure that the defendant has the capacity to understand the choice between life and death, and to knowingly and intelligently waive his right to appeal his sentence.[6] Our requirements ensure that a capital defendant's waiver of rights comports with the general standard set forth by the United States Supreme Court to determine whether a capital defendant may end his appeals: "whether [the defendant] has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises."[7]

¶ 4 Before permitting a waiver of the rights to jury trial and to present mitigating evidence, the trial court must order an independent competency evaluation.[8] After making the determination that a defendant is competent to waive a jury trial, a trial court must follow several steps to ensure a defen-

dant is knowingly and intelligently waiving the presentation of mitigating evidence.

(1) The court must inform the defendant of the right to present mitigating evidence, and what mitigating evidence is.

(2) The court must inquire both of the defendant and his attorney (if not pro se) whether he or she understands these rights.

(3) The court should also inquire of the attorney if he or she has attempted to determine from the defendant whether there exists any evidence which could be used to mitigate the aggravating circumstances proven beyond a reasonable doubt by the prosecution.

(4) If such information has been given, the attorney must advise the court what that mitigating evidence is; if the defendant has refused to cooperate, the attorney must relate that to the court.

(5) The trial court must inquire of a defendant and make a determination on the record whether the defendant understands the importance of mitigating evidence in a capital sentencing scheme, understands such evidence could be used to offset the aggravating circumstances proven by the prosecution in support of the death penalty, and the effect of failing to present that evidence.

(6) After being assured the defendant understands these concepts, the court must inquire of the defendant whether he or she desires to waive the right to present such mitigating evidence.

(7) Finally, the court should make findings of fact pursuant to *Grasso* of the defendant's understanding and waiver of rights.[9]

¶ 5 At the outset, we compliment the trial court on its handling of these proceedings. The trial court scrupulously followed these steps, and repeatedly offered to allow Hooper to change his mind at virtually every stage of the proceedings. We also are compelled to confirm the procedural posture of

6. *Wallace v. State*, 1995 OK CR 19, 893 P.2d 504, 510; *Grasso v. State*, 1993 OK CR 33, 857 P.2d 802, 806.

7. *Rees v. Peyton*, 384 U.S. 312, 314, 86 S.Ct. 1505, 1506, 16 L.Ed.2d 583 (1966).

8. *Fluke v. State*, 2000 OK CR 19, 14 P.3d 565, 567; *Grasso*, 857 P.2d at 806.

9. *Wallace*, 893 P.2d at 512–13.

this case. Hooper received a resentencing hearing below, and this Court is conducting a mandatory sentence review of the death sentences imposed at that proceeding. While the State seems somewhat confused regarding the nature of this hearing, with prosecutors and appellate attorneys suggesting that Hooper was entering a guilty plea, the trial court made clear that, pursuant to the federal court remand, it was conducting a resentencing hearing. The trial court heard and considered evidence, as is common in trial proceedings but not done in plea proceedings. No plea proceedings were conducted and the record nowhere reflects that a guilty plea was entered at any time. There was no question of guilt, as Hooper had already been convicted of the crimes, and one cannot plead guilty to a particular sentence.

¶ 6 Before beginning resentencing proceedings, the court appointed an expert to conduct an independent competency evaluation, and urged Hooper to submit to an evaluation by an expert retained by defense counsel as well. The court's expert conducted a thorough evaluation. The expert's written competency evaluation, which is included in the record, shows that he examined Hooper thoroughly on his capacity to understand the choice between life and death, and the rational and intelligent reasons Hooper gave for preferring execution to life imprisonment. The expert specifically noted that Hooper did not express delusional beliefs regarding what would happen if he were executed. During the hearing, defense counsel stated that he accepted the expert's conclusion of competency. Counsel noted that Hooper had been evaluated by a defense expert but did not provide the trial court with any expert report.[10] Defense counsel stated that he had no evidence available which contradicted the expert's conclusion that Hooper was competent to stand trial. Based on the evidence before it, the trial court made an initial determination of competency.

¶ 7 The sentencing hearing was held on September 8 and 30, 2004. Before beginning the sentencing hearing on September 8, and during the hearing itself, the trial court offered Hooper another opportunity to have a jury trial. Hooper continued to waive that right. The trial court engaged in a long colloquy with the defendant regarding the definition, nature and purpose of mitigating evidence. Defense counsel stated that Hooper had explicitly directed counsel not to contact experts, family, friends, or anyone else for the purpose of presenting mitigating evidence, and Hooper confirmed this. Counsel presented the trial court with an oral and written proffer of mitigating evidence, including expert evidence, which counsel would present if allowed, and discussed other areas which counsel would investigate if allowed. Both Hooper and defense counsel assured the court that Hooper understood the purpose and importance of mitigating evidence and his right to present it, and Hooper unequivocally stated he did not wish to present mitigating evidence. The trial court formally found Hooper competent to understand the nature and purposes of the proceeding, to waive his right to a jury, and to waive his right to present mitigating evidence. The court found that Hooper had asked the trial court to conduct a resentencing hearing and had specifically prohibited counsel from calling witnesses or presenting mitigating evidence. The hearing was continued while the trial court reviewed evidentiary materials presented by the State.

¶ 8 At the September 30 continuation of the sentencing hearing, the trial court began by again addressing the issue of Hooper's competency to waive his right to jury trial. Counsel confirmed that Hooper had been seen by a mental health provider, who suggested he be medicated for chronic depression. However, Hooper was taking only arthritis medication at the time of the hearing. Counsel stated that he felt Hooper was suffering from chronic serious depression, but was competent for purposes of the proceedings. The trial court found Hooper competent to assist counsel and understand the nature, purposes and consequences of the proceedings. The Court once again offered Hooper a jury trial on resentencing, and

---

10. The proffer of mitigating evidence prepared for the trial court includes a summary of the defense expert's findings. The expert concluded that Hooper was severely and profoundly depressed.

Hooper again waived that right. The trial court offered Hooper the opportunity to withdraw his March 19 *pro se* motion, which asked for a sentence of death. Hooper declined to withdraw that motion and stated he would accept whatever sentence the trial court found appropriate. As a final preliminary matter, the trial court noted that Hooper could ask to stop the proceedings at any time in order to consult with counsel.

¶ 9 Before announcing its decision, the trial court made a lengthy and very specific record as to what evidence it had considered. This evidence included evidence presented by the State and defense in the first and second stages of Hooper's trial. It did not include voir dire, opening statements, victim impact evidence, or argument by attorneys. It also did not include evidence which both parties had agreed should be omitted. The trial court also reviewed the tender of mitigation evidence prepared by Hooper's defense counsel for resentencing. The trial court again asked Hooper whether he wished that evidence to be presented on his behalf, and Hooper said he did not. The trial court, noting counsel's opinion that Hooper suffered from severe depression, found Hooper competent to waive presentation of mitigating evidence.

¶ 10 The trial court once again determined that Hooper was knowingly and intelligently waiving the right to present mitigating evidence. The trial court noted that defense counsel were experienced and accomplished capital attorneys, and that Hooper was proceeding against their advice. In a lengthy conversation, the trial court asked whether Hooper had been pressured in any way to disregard counsels' advice, defined evidence in aggravation and mitigation, and asked whether Hooper understood the purposes of that evidence.[11] Hooper said he had not been pressured, that he understood the issue, that he had discussed his decision with counsel many times, and that he did not wish to present mitigating evidence. The trial court asked whether Hooper understood that he was facing the death penalty, and the difference between that sentence and the sentences of life and life without parole. Hooper said he understood. The trial court asked whether Hooper understood that he could not change his mind and ask an appellate court to allow him to present mitigating evidence after waiving that right. Hooper said he understood and preferred not to present mitigating evidence.

¶ 11 The trial court entered formal findings of fact on these issues.[12] The trial court repeated its formal findings of fact regarding competency and Hooper's waivers which had been entered on September 8. The trial court further entered formal findings of fact that Hooper understood the importance of aggravating and mitigating evidence, his right to present mitigating evidence, and that defense counsel advised Hooper to investigate and present mitigating evidence in addition to the evidence tendered on September 8. The trial court found that Hooper understood that failure to present mitigating evidence could result in imposition of the death penalty, understood the difference between life and death, and understood the different sentences which might be imposed. The trial court made these findings to support the determination that Hooper was competent to waive the presentation of mitigating evidence, and that that waiver was knowing and intelligent.

¶ 12 After reviewing the evidence and hearing argument, the trial court made findings regarding the allegations in the Bill of Particulars. The trial court found beyond a reasonable doubt that, as to Counts I, II and III, Hooper knowingly created a great risk of death to more than one person. As to all three counts, the trial court found beyond a reasonable doubt that Hooper would commit criminal acts of violence that would constitute a continuing threat to society, based on the brutal and callous nature of Hooper's actions, his efforts to conceal the crimes, and evidence of prior unadjudicated violent acts. As to Counts II and III, the trial court also found beyond a reasonable doubt that the murders were committed for the purpose of avoiding or preventing a lawful arrest or

11. The trial court had conducted this same conversation in the September 8 hearing.

12. *Wallace,* 893 P.2d at 513.

prosecution. The court considered, and put on the record, mitigating evidence which had been presented on Hooper's behalf during his first trial, as well as the proffer of mitigating evidence tendered to the court for this sentencing proceeding. The trial court found as a matter of law that the aggravating circumstances were not outweighed by the mitigating evidence. The trial court again noted that Hooper was competent to waive his rights to jury trial and to present mitigating evidence, and had done so against the advice of counsel. The trial court sentenced Hooper to death on all three counts, but emphasized that the sentences were based on the law and the facts, not on Hooper's personal wishes.

¶ 13 Formal sentencing was held on October 27, 2004. After inquiry of counsel and Hooper, the trial court determined that Hooper was competent to continue with the proceedings. The court determined that Hooper understood this Court was required by statute to conduct a mandatory sentence review. The trial court discussed Hooper's right to appellate review, and made a preliminary determination that Hooper did not wish to initiate a direct appeal of his sentences. The court determined that Hooper had not been pressured in any way to waive his right to a direct appeal. The trial court determined that Hooper understood the difference between life and death, and that he would be put to death by lethal injection if the trial court imposed the death sentences. The trial court then formally imposed sentences of death on Counts I, II and III.

¶ 14 After the imposition of the death penalty, the trial court discussed Hooper's right to appeal those sentences. Hooper directed counsel, in writing, not to file either a direct appeal from the sentences or a post-conviction challenge. The trial court questioned Hooper and determined that he understood his right to direct appeal and that a mandatory sentence review would occur whether or not an appeal was filed. After this exchange the trial court found Hooper understood the proceedings and was competent to waive his right to a direct appeal from the resentencing proceedings. The trial court further found that Hooper had the benefit of experienced and capable capital counsel. The court found that Hooper understood the difference between life and death and had made a knowing and intelligent waiver of his right to appeal. This meticulous record shows that Hooper had the capacity to understand the choice between life and death, and to knowingly and intelligently waive his right to appeal his sentence, and did knowingly and intelligently waive that right.[13]

¶ 15 Hooper claims in Proposition I that this Court's current competency standard in these cases is inadequate to ensure that mentally ill defendants can make a valid waiver of the right to present mitigating evidence and to a direct appeal. Hooper essentially concedes that the trial court followed the law in determining that Hooper was competent to knowingly and intelligently waive his rights to a jury trial, to present mitigating evidence, and to appeal. Hooper claims that the standard questions regarding competency to stand trial are not adequate to determine whether a mentally ill defendant can make a valid waiver.[14] Hooper suggests that, in addition to the factors currently used to determine competency, we add three more: (1) whether a person is suffering from a mental disease or defect; (2) if that disease or defect prevents him from understanding his legal position and the options available to him; and (3) if his condition does not prevent him from understanding his legal position and available options, does it prevent him from making a rational choice among his

---

13. *Duty v. State*, 2004 OK CR 20, 89 P.3d 1158, 1160; *Wallace*, 893 P.2d at 510; *Grasso*, 857 P.2d at 806.

14. Those questions are: (a) whether the defendant understands the nature of the charges against him; (b) whether he can consult with his attorney and rationally assist in the preparation of his defense; (c) if the answer to questions (a) or (b) is no, whether the defendant can attain competency within a reasonable time if appropriately treated; (d) if the defendant is a person requiring treatment for mental illness or mental retardation as defined in the Oklahoma Statutes, and, if so, specifically why the defendant is incompetent; (e) whether, if the defendant were released without appropriate treatment, he would presently pose a danger to himself or others. 22 O.S.2001, § 1175.3(E).

options.[15] He suggests that these questions are necessary to fulfill the United States Supreme Court requirement that a court determine whether a defendant can appreciate his position and make a rational choice with respect to continuing or abandoning further litigation, or instead suffers from a mental disease, disorder, or defect which may substantially affect his capacity.[16] However, Oklahoma's combination of questions which must be asked to determine competency, and which must be specifically asked where capital defendants wish to waive their statutory rights to a jury trial, presentation of mitigating evidence, and appeal, are comparable to Hooper's proposed questions. A defendant whose mental disease or defect either prevents him from understanding his legal position and available options, or prevents him from making a rational choice among his options, will not be found competent under our current law.[17]

¶ 16 Hooper's claim in Proposition I rests substantially on his contention that he is mentally ill and that his mental illness affected his ability to make a valid waiver. The record does not support the claim that Hooper was unable to make a valid waiver due to a mental illness. The record does indicate that defense counsel and a defense expert believed Hooper to be suffering from chronic, serious depression. However, neither counsel nor the defense expert believed that his condition affected Hooper's ability to make a valid waiver. The expert who performed the independent competency evaluation specifically found that Hooper, while depressed, did not present with symptoms of a mental illness, and offered a rational basis for his decisions. Further, although the State's expert evaluation answers the standard competency questions, the evaluation itself explores Hooper's competency specifically as it relates to the death penalty and capital punishment issues. Hooper presents this Court with affidavits suggesting that now, after receiving medication and treatment, he would make a different choice.[18] This material tells the Court what Hooper might do now, faced with the same options he had at the time of his sentencing hearing. However, it does not show that Hooper was unable to make a valid waiver at that time. The trial court thoroughly examined Hooper, and considered the expert evaluation and Hooper's attorney's information, before de-

15. These questions are based on those asked in *Ross ex rel. Smyth v. Lantz*, 392 F.Supp.2d 236, 238 (D.Conn.2005) and *Rumbaugh v. Procunier*, 753 F.2d 395, 398 (5th Cir.1985), and implied in an Eighth Circuit case, *Smith ex rel. Mo. Pub. Defender Comm'n v. Armontrout*, 812 F.2d 1050, 1057 (8th Cir.1987). Those cases interpret the *Rees* standard, which asks if a defendant can appreciate his position and make a rational choice with respect to continuing or abandoning further litigation, or instead suffers from a mental disease, disorder, or defect which may substantially affect his capacity. *Rees*, 384 U.S. at 314, 86 S.Ct. at 1506,

16. *Rees*, 384 U.S. at 314, 86 S.Ct. at 1506.

17. Hooper suggests that the Tenth Circuit has required more than our current law provides. In *Hays v. Murphy*, 663 F.2d 1004 (10th Cir. 1981), the Tenth Circuit found the state court determination of competency inadequate where a capital defendant wished to waive all appeals after his conviction was affirmed on direct appeal. That case was well before the imposition of the current statutory and case law requirements for capital competency issues, and the minimal state procedures used to uphold competency there would not be adequate under current law.

18. On November 8, 2005, Hooper filed a request to supplement the record with evidence of his present mental health, bearing on his ability to make a valid waiver at the time of his resentencing proceedings. We consider this material as part of our mandatory sentence review. While our Rules limit the ways in which this Court will normally consider that material, that limitation applies only to cases in which an appeal is pursued. Rule 3.11(B), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2006) (extra-record material offered to supplement an appeal may only be offered in connection with a timely filed motion for new trial or a particular claim of ineffective assistance of trial counsel). Rule 3.11(B) does not apply here, where the Court is not considering a direct appeal or post-conviction claim. In this mandatory sentence review, we are required by statute to determine whether Hooper's sentence of death was factually substantiated by evidence of aggravating circumstances, and was imposed under the influence of passion, prejudice or any arbitrary factor. 21 O.S.2001, § 701.13(C). The scope of materials we may consider in making this determination is not limited by whether a proffered filing might be considered on traditional appellate review. Hooper's motion to supplement the record is **GRANTED**.

termining Hooper was competent to validly waive his rights to jury trial and mitigating evidence, and to appeal. As we find above, our current procedures protect the rights of a defendant who wishes to waive the rights to jury trial, presentation of evidence and appeals. Hooper was competent to make a valid waiver, and this proposition is denied.

█ ¶ 17 We have found that Hooper entered a valid waiver of his right to a direct appeal from his sentences of death. Simply put, by this waiver Hooper gave up the right to contest evidentiary issues arising in the resentencing trial. In Propositions II, III, and IV Hooper complains of particular evidence, or categories of evidence, which he argues the trial court should not have considered.[19] Hooper has waived these claims and we do not consider them.

█ ¶ 18 In Proposition V Hooper claims that insufficient evidence supported the trial court's finding of the continuing threat aggravating circumstance beyond a reasonable doubt. The trial court found this aggravating circumstance was supported by (a) the brutal and callous nature of the crimes themselves, including the gunshot wounds at close range to the face and head of all three victims, and the circumstance that one victim was fleeing at the time she was shot; (b) Hooper's conscious and deliberate efforts to conceal and destroy evidence and conceal the commission of the crimes; and (c) evidence of prior unadjudicated acts of violence by Hooper against his former wife. This Court has upheld use of the circumstances of the crime,[20] and of unadjudicated offenses,[21] to support this aggravating circumstance. Hooper argues the evidence was too remote in time to support a contention that he is presently a continuing threat to society. Although Hooper presented no mitigating evidence, the trial court considered his proffer of mitigating evidence. This included prospective testimony that Hooper had adjusted well to prison life. The trial court did not err in concluding, from the evidence in the record, that Hooper presently constitutes a continuing threat to society. This proposition is denied.

█ 19 This Court is required by statute to conduct a mandatory sentence review, to determine whether the death sentences were imposed under the influence of passion, prejudice, or any other arbitrary factor; and if the trial court's findings of statutory aggravating circumstances are supported by the evidence.[22] As noted above, our standard of review is whether the defendant had the capacity to understand the choice between life and death, and to knowingly and intelligently waive his right to appeal his sentence.[23] We find the record amply establishes that Hooper understood the choice between life and death, that he was competent, and that he knowingly, intelligently and voluntarily waived his rights to jury trial, to present mitigating evidence, and to appeal.[24] The trial judge meticulously put on the record all the evidence he considered which supported the aggravating circumstances be-

**19.** In Proposition II Hooper claims the trial court should not have allowed the State to present evidence in aggravation by way of transcript without a showing that the witnesses were unavailable. In Proposition III Hooper claims the trial court erred by reading transcripts from a previous trial in private rather than having the transcripts read in a public hearing. In Proposition IV Hooper claims the trial court should not have considered Officer Abrahamsen's testimony regarding statements made by a victim.

**20.** *Wackerly v. State*, 2000 OK CR 15, 12 P.3d 1, 18; *Malicoat v. State*, 2000 OK CR 1, 992 P.2d 383, 398; *Fitzgerald v. State*, 2002 OK CR 31, 61 P.3d 901, 906 n. 26.

**21.** *Wackerly*, 12 P.3d at 16–17; *Lockett v. State*, 2002 OK CR 30, 53 P.3d 418, 428; *Malicoat*, 992 P.2d at 397; *Charm v. State*, 1996 OK CR 40, 924

P.2d 754, 763. I continue to believe that evidence of unadjudicated offenses should not be admitted to support the continuing threat aggravating circumstance. I find that, even without this evidence, sufficient evidence supports the finding of each aggravating circumstance beyond a reasonable doubt.

**22.** 21 O.S.2001, § 701.13(C). Hooper has also waived his right to oral argument, and no oral argument is necessary. His Application for Oral Argument, filed November 8, 2005, is **DENIED.** *Duty*, 89 P.3d at 1161 n. 4.

**23.** *Grasso*, 857 P.2d at 806.

**24.** *Fluke*, 14 P.3d at 569.

yond a reasonable doubt.[25] Although Hooper did not present mitigating evidence, the trial court considered the proffer of mitigating evidence presented by defense counsel, and reviewed the mitigating evidence admitted in the original sentencing trial.[26] The record supports our conclusion that the trial court's imposition of the death penalty was based on the law, facts and circumstances of the case, and is supported by the evidence. The evidence considered by the trial court supports the statutory finding of aggravating circumstances. The sentences were not imposed under the influence of passion, prejudice, or any other arbitrary factor, including Hooper's own expressed wish to receive the death penalty.[27]

### Decision

¶ 20 The Judgments and Sentences of the District Court are **AFFIRMED**. Hooper's Application for Oral Argument is **DENIED**. Hooper's Motion to Supplement the Record with Extra–Record Material is **GRANTED**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2006), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, A. JOHNSON and LEWIS, JJ.: concur.

LUMPKIN, V.P.J.: concur in results.

LUMPKIN, Vice–Presiding Judge: concur in results.

¶ 1 I concur in the results reached by the Court in this case. However, I disagree with the Court's manner of handling the *ex parte* materials addressed in 18. *Ex parte* filings are not evidence in the case as they have not been subjected to an adversarial testing in the trial court. Our Court rules and case law have consistently held that matters of this type are submitted and accepted for a very limited purpose, *i.e.,* to make a threshold showing that an evidentiary hearing in the District Court is warranted. *See* Rule 3.11, *Rules of the* Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2006). *See also Lott v. State*, 2004 OK CR 27, ¶ 135, 98 P.3d 318, 351; *Short v. State*, 1999 OK CR 15, ¶ 93, 980 P.2d 1081, 1108. Untested *ex parte* filings are never to be accepted as part of the record on appeal for determination of issues presented on the merits. *See Dewberry v. State*, 1998 OK CR 10, ¶ 9, 954 P.2d 774, 777 (materials not presented to the trial court for review are not a part of the appellate record and should not be considered by this Court).

¶ 2 Reviewing the material presented in the present case, for their proper limited purpose, I find an evidentiary hearing is not supported. While Appellant may feel better about himself due to the medication he now takes, it in no way changes the fact he was competent, fully understood the rights and admonitions given by the District Court, and knowingly waived these rights. He was unequivocal at that time and his current equivocation should not be allowed to override that decision. Judge Cunningham was meticulous, thorough, and repeatedly gave Appellant an opportunity to change his mind, which he declined. Therefore, I find the decision of this Court to be factually and legally correct.

---

**25.** This includes the facts and circumstances of the crimes themselves, Hooper's subsequent actions taken to conceal the crimes, and prior unadjudicated violent acts by Hooper.

**26.** This includes evidence that Hooper currently suffers from serious and profound depression; the possibility that Hooper suffers from other mental disorders; the troubled circumstances of his childhood; his childhood learning disabilities, frustration, and problems with impulse control and completion of projects; his history of alcohol and substance abuse and treatment; that Hooper loved animals, is involved with is family, has behaved well in prison, and is helpful and good.

**27.** *Id.*