FILED
United States Court of Appeals
Tenth Circuit

August 10, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MICHAEL EDWARD HOOPER,

      Plaintiff-Appellant,

v.

JUSTIN JONES, Director DOC;
RANDALL G. WORKMAN, Warden;
DOES, Unknown Executioners,

      Defendants-Appellees.

No. 12-6202
(D.C. No. 5:12-cv-00758-M)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

Michael Edward Hooper, an Oklahoma state prisoner scheduled for execution

by lethal injection on August 14, 2012, appeals from the district court's order

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

denying his motion for a preliminary injunction seeking to stay his execution. Exercising jurisdiction under 28 U.S.C. § 1292(a)(1), we AFFIRM.[1]

I

Mr. Hooper was tried and convicted on three counts of first-degree murder and sentenced to death. *See Hooper v. State*, 947 P.2d 1090 (Okla. Crim. App. 1997). Although his death sentences were initially set aside in federal habeas proceedings, *see Hooper v. Mullin*, 314 F.3d 1162 (10th Cir. 2002), on remand he waived his rights to be sentenced by a jury and to present mitigating evidence, and he was again sentenced to death on all three counts. The Oklahoma Court of Criminal Appeals affirmed. *Hooper v. State*, 142 P.3d 463 (Okla. Crim. App. 2006). The federal district court denied habeas relief, and we denied a certificate of appealability, *Hooper v. Workman*, 446 F. App'x 88 (10th Cir. 2011), *cert. denied*, 132 S. Ct. 2721 (2012). Subsequently, the State of Oklahoma scheduled Mr. Hooper's execution for August 14.

Mr. Hooper then filed a 42 U.S.C. § 1983 action in federal district court, challenging Oklahoma's three-drug execution protocol on the bases that (1) no backup dosage of pentobarbital is required to be maintained on hand if the first five gram dose fails to render the inmate unconscious before administration of the second drug, vecuronium bromide; (2) recently acquired stocks of pentobarbital that could be

---

[1]    Pursuant to Fed. R. App. P. 35, the panel circulated this opinion to the active judges of the court for sua sponte consideration of whether en banc review is necessary. No active judge called for a poll.

used as a backup have an unknown shelf life and may or may not be suitable for human use; and (3) several other states have adopted a one-drug protocol, thereby undermining Oklahoma's adherence to a three-drug protocol. In support of his claims, Mr. Hooper moved for preliminary injunctive relief to stay his execution.

The district court denied the motion, explaining that Mr. Hooper failed to offer anything more than speculation that the lack of a backup dose of pentobarbital would be dangerous. Indeed, the court noted that five grams of pentobarbital is an "enormous overdose" that would not only cause unconsciousness, but would drop blood pressure "to an unsurvivable level." Dist. Ct. Order at 8 (quotation omitted). Thus, there would be virtually no likelihood that an inmate would feel the effects of the subsequently administered vecuronium bromide and potassium chloride. And given that the State will not be using a backup pentobarbital dose, the court found Mr. Hooper's challenges to the recently acquired pentobarbital irrelevant. Finally, regarding Mr. Hooper's claim that other states' adoption of a one-drug protocol rendered Oklahoma's three-drug protocol suspect, the district court concluded that Mr. Hooper failed to show that Oklahoma's three-drug protocol was invalid in light of this Circuit's precedents upholding that protocol.

II

We review the district court's order for an abuse of discretion. *See Pavatt v. Jones*, 627 F.3d 1336, 1338 (10th Cir. 2010). "[L]ike other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must

- 3 -

satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

We conclude that the district court did not abuse its discretion. Although an execution protocol that subjects a prisoner to a risk of future harm can constitute cruel and unusual punishment in violation of the Eighth Amendment, "the conditions presenting the risk must be *sure or very likely* to cause serious illness and needless suffering, and give rise to sufficiently *imminent* dangers." *Baze v. Rees*, 553 U.S. 35, 49-50 (2008) (quotation omitted). Thus, "[s]imply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of objectively intolerable risk of harm that qualifies as cruel and unusual." *Id.* at 50 (quotation omitted). Rather, to obtain an execution stay on the grounds of an unconstitutional lethal-injection protocol, the prisoner must show that the "protocol creates a demonstrated risk of severe pain . . . [and] that the risk is substantial when compared to the known and available alternatives." *Id.* at 61.

The district court aptly applied these principles to Mr. Hooper's execution challenges. Specifically, Mr. Hooper has not shown that the lack of a backup dose is sure or very likely to leave him conscious to experience the effects of the vecuronium bromide. Indeed, as the district court found, and as we referenced in *Pavatt*, a five-gram dosage of pentobarbital (administered in 2.5 gram dosages through two IV lines) "would likely be lethal in most, if not all, instances." 627 F.3d at 1340. And Oklahoma further reduces the risk of consciousness prior to vecuronium bromide

administration by "requir[ing] the attending physician to confirm that an inmate is unconscious prior to the administration of the final two drugs in the . . . protocol." *Id.* Moreover, we have previously determined, when Oklahoma's execution protocol included sodium thiopental rather than pentobarbital as the first-drug barbiturate, that the lack of a backup dose was not problematic where there was no evidence that the initial dose would be insufficient to fully anesthetize the prisoner. *Wackerly v. Jones*, 398 F. App'x 360, 363 (10th Cir. 2010) (per curiam). Here, nothing suggests that the five-gram dosage of pentobarbital may be insufficient.[2]

To the extent Mr. Hooper contends that "the one-drug protocol [is] now mandatory under the Eighth Amendment" given that other states have adopted it, Aplt. Br. at 20, we again agree with the district court. Mr. Hooper has failed to

---

[2] Mr. Hooper speculates that the pentobarbital could be administered improperly, resulting in a less-than-sufficient dose to render him unconscious. In that event, Mr. Hooper asserts, the execution protocol is silent as to what will occur "where monitoring of consciousness has the potential to show he has not been rendered sufficiently unconscious and is therefore able to experience pain, but where there is no additional anesthetic (the first drug) available which could render him sufficiently unconscious." Aplt. Br. at 5. But Mr. Hooper has not shown that such a possibility is a "sufficiently imminent danger[ ]." *Baze*, 553 U.S. at 50. Indeed, the execution protocol calls for the insertion of two IV lines, each with 2.5 grams of pentobarbital. And the protocol requires the attending physician to "'ensure'" that the inmate is sufficiently unconscious prior to the administration of the vecuronium bromide. Aplt. Br. at 5 (quoting protocol). "[A]n inmate cannot succeed on an Eighth Amendment claim simply by showing one more step the State could take as a failsafe for other, independently adequate measures." *Baze*, 553 U.S. at 60-61.

Given that Mr. Hooper has not established entitlement to an on-hand, backup dose of pentobarbital, we need not address his challenges to the recently acquired stocks of pentobarbital, which will not be used in his execution.

demonstrate that Oklahoma's three-drug execution protocol is unconstitutional. He has not demonstrated either that (1) Oklahoma's pentobarbital-initiated three-drug protocol presents a sure or very likely risk of needless suffering or imminent danger, or (2) a one-drug alternative is substantially less risky. *See Baze*, 553 U.S. at 49-50, 61. We have upheld Oklahoma's three-drug protocol on prior occasions, *see, e.g.*, *Pavatt*, 627 F.3d at 1338-41, and the Supreme Court has announced that "[a] State with a lethal injection protocol substantially similar to the [three-drug sodium-thiopental initiated] protocol" is not in violation of the Constitution, *Baze*, 553 U.S. at 61. Mr. Hooper's argument that a one-drug protocol is constitutionally mandated is without merit.

### III

We conclude that the district court did not abuse its discretion in denying preliminary-injunctive relief. Accordingly, the judgment of the district court is AFFIRMED. Hooper's motion for a stay pending appeal is DENIED as moot. The mandate shall issue forthwith.

Entered for the Court

Per Curiam